**TRAYCO, INCORPORATED,**
**Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–**
**Appellant.**

No. 92–1406.

United States Court of Appeals,
Federal Circuit.

June 3, 1993.

Jon Rene Josey, Rogers, McBratney & Josey, Florence, SC, argued, for plaintiff-appellee.

E. Roy Hawkins, Attorney, Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., E. Bart Daniel, U.S. Atty., John S. Simmons, U.S. Atty. and Michael Jay Singer.

Before NEWMAN, Circuit Judge, SMITH, Senior Circuit Judge, and ARCHER, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

The government appeals the decision of the United States District Court for the District of South Carolina entered on 26 March 1991. The district court held that it had jurisdiction under 28 U.S.C. §§ 1346(a)(2), 1355 (1988) to review the legality of a penalty assessed against Trayco, Inc. (Trayco) by the United States Customs Service. The court held that there was no factual basis to support the penalty imposed by Customs and ordered the government to return the mitigated penalty paid by Trayco in the sum of $7,519.00.[1] We affirm.

### Issues

The government appeals two issues. First, did the district court have subject matter jurisdiction to review the legality of a penalty imposed by the United States Customs Service under 19 U.S.C. § 1592(a), (c)

---

1. *Trayco, Inc. v. United States,* No. 4:89–0361–2, 1991 WL 516834 (D.S.C. Mar. 26, 1991).

(1988) in a refund suit brought by the importer? Second, is Trayco estopped from seeking judicial review because it first challenged the penalty through administrative procedures and consequently received and paid a mitigated penalty?

## Background

Trayco, an importer and distributor of plumbing supplies, brought suit in the United States District Court for the District of South Carolina alleging that the United States Customs Service improperly assessed an import penalty under 19 U.S.C. §§ 1304(a),[2] 1592(a), (c)[3] (1988).[4] Trayco alleged jurisdiction in the district court under 28 U.S.C. §§ 1346(a)(2),[5] 1355.[6]

During the bench trial, the district court concluded that it had subject matter jurisdiction under 28 U.S.C. §§ 1346(a)(2), 1355. The court ordered the government to refund the mitigated penalty paid by Trayco because it found no factual basis to support the penalty. The government appeals.[7]

## Facts

In November 1986, Trayco attempted to import a shipment of individually packaged shower heads through the Port of Charleston, South Carolina. Upon inspection, Customs seized the shipment because the individual boxes were not properly marked with the country of origin as required by 19 U.S.C. § 1304(a). Customs directed Trayco to mark the boxes in accordance with the law, and released the boxes to Trayco for marking at Trayco's warehouse pursuant to regulation. 19 C.F.R. § 134.53(a)(2) (1986). On 10 December 1986, Trayco's President, J. Ray Turner, certified to Customs, in writing, that the boxes had been properly marked with the country of origin.

On 22 December 1986, a Customs official visited Trayco's premises to conduct a reinspection. An unidentified employee directed the official to cartons of shower heads in the back of the warehouse. With the exception of the contents of two cartons, none of the individual boxes of shower heads had been properly marked. The Customs official then spoke with Mr. Turner who verified that the cartons inspected were the ones that Customs had directed to be correctly marked. The two men apparently had an argument, and Mr. Turner ordered the Customs inspector off the premises.[8]

2. Section 1304(a) requires importers to mark shipments with the country of origin.

3. Section 1592 gives Customs the authority to assess penalties against importers for acts of fraud, gross negligence, and negligence, which deprive the United States of lawful duties.

4. All textual references to the United States Code are to the 1988 edition unless otherwise noted.

5. Section 1346(a)(2) provides in part:

(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
(2) Any ... civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department....

28 U.S.C. § 1346(a)(2) (1988), *as amended by* the Federal Courts Administrative Act of 1992, Pub.L. No. 102–572, § 902, 106 Stat. 4506, 4516.

6. Section 1355 provides:

The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

28 U.S.C. § 1355 (1988).

7. The government initially filed its appeal in the United States Court of Appeals for the Fourth Circuit. The Fourth Circuit affirmed the district court, dismissing both of the government's arguments. The government challenged the Fourth Circuit's appellate jurisdiction for the first time in a petition for rehearing. The Fourth Circuit vacated its opinion and transferred the case to the United States Court of Appeals for the Federal Circuit. *Trayco, Inc. v. United States*, 967 F.2d 97 (4th Cir.1992). The Federal Circuit has exclusive appellate jurisdiction over appeals where the district court jurisdiction is based in whole or part on the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1988). 28 U.S.C. § 1295(a)(2) (1988).

8. Trayco asserts, and the district court found, that all of the boxes in dispute had, in fact, been properly marked. The district court based its findings on the testimony of the Trayco employees charged with completion of the task. The employees responsible for marking the boxes in

As a result of the reinspection, Customs constructively seized the shipment pursuant to 19 U.S.C. § 1592(c)(5). Customs released the shipment to Trayco on 11 February 1987 upon the posting of a letter of credit for a security deposit of $12,030.40. On 19 October 1987, Customs sent Trayco a pre-penalty notice stating that Customs was contemplating assessing a penalty based on the improperly marked boxes of shower heads. Trayco responded both orally and in writing that a penalty was not warranted.

On 15 July 1988, Customs assessed a penalty of $12,030.40 against Trayco for gross negligence pursuant to 19 U.S.C. § 1592(a), (c). On 22 July 1988, Trayco filed a petition for mitigation or remission of the penalty pursuant to 19 U.S.C. § 1618.[9] On 1 August 1988, Customs denied Trayco's petition. Trayco subsequently filed a supplemental petition for relief pursuant to 19 C.F.R. § 171.33(a).[10] On 22 September 1988, Customs mitigated the penalty to $7,519.00, but declined to mitigate the penalty in its entirety based on Customs' conclusion that Trayco's certification of 10 December 1986 contained false, material facts.

Trayco filed a second supplemental petition for relief on 21 November 1988 and paid the mitigated penalty as required by 19 C.F.R. § 171.33(c)(1).[11] Trayco accompanied its check for $7,519.00 with a cover letter noting that the payment was being made "under protest reserving all rights to judicial review following the exhaustion of the administrative remedies." Customs denied Trayco's second supplemental petition. Trayco then commenced this action in the United States District Court for the District of South Carolina seeking a refund of the mitigated penalty in the amount of $7,519.00 on the grounds that the penalty is unlawful, erroneous, and unsupported by the facts.

*Jurisdiction*

■ The government's first argument is that the district court's judgment should be vacated because the court lacked subject matter jurisdiction. The district court's conclusion that it possessed subject matter jurisdiction is a question of law subject to complete and independent review. *See Transamerica Ins. Corp. v. United States,* 973 F.2d 1572, 1576 (Fed.Cir.1992) (*de novo* review); *Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir.1992) (*de novo* review). *See also In re Sure–Snap Corp.,* 983 F.2d 1015, 1017 (11th Cir.1993) (conclusions of law subject to complete and independent review).

The government asserts that Congress intended, by the detailed and comprehensive statutory scheme of the Customs Courts Act

question were not available when the Customs official arrived for the reinspection, and the official was directed to the wrong shipment. To complicate the situation, the boxes had been moved to a building next door to the Trayco warehouse without Mr. Turner's knowledge. The government has not appealed the district court's findings of fact.

9. Section 1618 provides in part:

Whenever any person ... who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury ... or the Commissioner of Customs ... a petition for the mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, ... or the Commissioner of Customs, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such

terms and conditions as he deems reasonable and just....
19 U.S.C. § 1618 (1988).

10. Section 171.33(a) provides:

If the petitioner is not satisfied with a decision of the district director or the Commissioner of Customs, a supplemental petition may be filed with the district director.
19 C.F.R. § 171.33(a) (1986), *as amended by* 56 Fed.Reg. 40,780 (1991); 56 Fed.Reg. 48,823 (1991).

11. Section 171.33(c)(1) provides:

Only one further supplemental petition may be filed appealing a decision made with respect to an initial supplemental petition. The second supplemental petition will not be accepted unless accompanied or preceded by full payment of all penalties and with-held duties determined to be due in the decision rendered on the first supplemental petition.
19 C.F.R. § 171.33(c)(1) (1986), *as amended by* 56 Fed.Reg. 40,780 (1991); 56 Fed.Reg. 48,823 (1991).

of 1980,[12] to vest exclusive jurisdiction in the Court of International Trade for actions, like the instant one, that involve disputes regarding penalties arising from the importation of mislabeled items. We reject the government's position and conclude that a gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States for refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a), (c). Because we hold that the district court properly exercised jurisdiction under 28 U.S.C. § 1346(a)(2), we do not reach the issue whether the district court also had jurisdiction under 28 U.S.C. § 1355.

■ Federal district courts do not possess subject matter jurisdiction over controversies within the exclusive jurisdiction of the Court of International Trade. *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 187–90, 108 S.Ct. 950, 958–60, 99 L.Ed.2d 151 (1988); *Fritz v. United States*, 535 F.2d 1192, 1193–94 (9th Cir.1976); *J.C. Penney Co. v. United States Treasury Dep't*, 439 F.2d 63, 66 (2d Cir.), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). But it is also well settled that the Court of International Trade, like other specialized courts, "operates within precise and narrow jurisdictional limits" granted by Congress. *United States v. Biehl & Co.*, 3 Ct. Int'l Trade 158, 539 F.Supp. 1218, 1221 (1982). Despite the fact that the Customs Courts Act of 1980 broadened the exclusive jurisdiction of the Court of International Trade, it cannot exercise jurisdiction over actions not addressed by a specific jurisdictional grant.

Section 1581 of Title 28 grants exclusive jurisdiction to the Court of International Trade for certain civil actions brought against the United States. The government concedes that section 1581 does not explicitly grant exclusive jurisdiction to the Court of International Trade for a refund suit initiated by an importer against the United States. The Government, however, would have us construe 28 U.S.C. § 1581 expansively to include such an action.

■ As in any case of statutory construction, our starting point must be the language of the statute itself. *Richards Medical Co. v. United States*, 910 F.2d 828, 830 (Fed.Cir. 1990) (citing *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989)). A second principle of statutory construction is where a statute expressly enumerates the requirements on which it is to operate, additional requirements are not to be implied. *DeSisto College, Inc. v. Town of Howey–In–The–Hills*, 706 F.Supp. 1479, 1495 (M.D.Fla.), *aff'd*, 888 F.2d 766 (11th Cir.1989). *See also Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent." *Id.*).

■ In subsections (a)-(i) of section 1581, Congress specifically enumerated the types of actions against the United States over which the Court of International Trade has exclusive jurisdiction. The government is asking us to look beyond the plain language of the statute to the legislative history and conclude that this importer-initiated suit for refund of a penalty is within the exclusive jurisdiction of the Court of International Trade. We reject the government's argument and conclude that if Congress had intended all import-related matters to come within the exclusive jurisdiction of the Court of International Trade it would have specifically said so.

Section 1582 of Title 28 grants exclusive jurisdiction to the Court of International Trade over civil actions arising out of import transactions *commenced by the United States*. Trayco's action against the government meets two of the three jurisdictional requirements of section 1582: (1) it is a civil action; (2) arising out of an import transaction. The United States, however, did not commence this lawsuit in the district court. We reject the government's argument that no jurisdictional gap exists because Congress failed in section 1582 to explicitly grant the

---

12. Pub.L. No. 96–417, 94 Stat. 1727 (amending 28 U.S.C. §§ 251, 293, 1581–85, 2631–47).

Court of International Trade jurisdiction of civil actions arising out of import transactions *commenced by an importer.* *See Biehl,* 539 F.Supp. at 1221 (Section 1581(i), which expressly grants the Court of International Trade exclusive jurisdiction over actions against the United States, does not grant jurisdiction in similar actions brought by the United States.).

The government argues that our interpretation of sections 1581 and 1582 is wholly at odds with the statutory framework, the legislative history, and the congressional goals underlying the Customs Courts Act of 1980. The United States Supreme Court explained Congress' purpose in enacting the Customs Courts Act of 1980 in *K Mart Corp. v. Cartier, Inc.:*

> Congress intended, first and foremost, to remedy the confusion over the division of jurisdiction between the Customs Court (now the Court of International Trade) and the district courts and to "ensure . . . uniformity in the judicial decisionmaking process." . . . But Congress did not commit to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations.

485 U.S. 176, 188, 108 S.Ct. 950, 958, 99 L.Ed.2d 151 (1988) (citations omitted). Congress did not fully explain, and neither can we, why certain customs-related matters are excluded from the jurisdiction of the Court of International Trade. *See K Mart,* 485 U.S. at 189, 108 S.Ct. at 959. We refrain from interpreting either section 1581 or section 1582 as granting exclusive jurisdiction to the Court of International Trade over importer-initiated suits for refund of penalties improperly assessed and exacted under 19 U.S.C. § 1592(a), (c) where Congress has not explicitly done so.

Furthermore, we reject the government's argument that Trayco had no need and, more importantly, no right to initiate a suit in district court to challenge the penalty. The government takes the position that if Trayco desired judicial review, it need only have declined to pay the assessed penalty. Customs then would have commenced an enforcement action in the Court of Internation-

al Trade pursuant to 19 U.S.C. §§ 1592, 1604, and 28 U.S.C. § 1582(1).

■ Trayco could have obtained judicial review in the Court of International Trade by refusing to pay the penalty and waiting for the government to commence an enforcement action. However, there is no statutory bar to the course of action Trayco elected. Congress has not explicitly granted exclusive jurisdiction to the Court of International Trade over refund suits initiated by importers. A gap exists in the exclusive jurisdiction of the Court of International Trade. Therefore, Trayco had the option, and more importantly, the right to initiate suit in the district court to challenge the penalty.

■ Next, we must decide whether the district court properly exercised jurisdiction under 28 U.S.C. § 1346(a)(2). We conclude that it did. Trayco's action for reimbursement of a penalty assessed against it by Customs meets the jurisdictional requirements of section 1346(a)(2). It is: (1) a civil action; (2) against the United States; (3) in an amount not exceeding $10,000.00, specifically $7,519.00; and (4) founded upon an Act of Congress—section 592 of the Tariff Act of 1930.

Meeting the jurisdictional requirements of section 1346(a)(2), however, is not enough for Trayco to succeed in having its case heard in federal district court. "[T]he Tucker Act . . . is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction . . . whenever [a] substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Thus, Trayco must assert a "substantive right enforceable against the United States for money damages." *Id.*

Trayco alleges that the Customs Service improperly assessed and exacted a penalty from Trayco under 19 U.S.C. § 1592(a), (c). The refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages. *See Eastport Steamship Corp. v. United States,* 372 F.2d 1002, 178 Ct.Cl. 599, 605 (1967) ("[T]he claim must assert that the value sued for was

improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Id.*). Thus, Trayco satisfied the requirements for jurisdiction in federal district court under the Tucker Act; Trayco met the jurisdictional prerequisites of section 1346(a)(2) and alleged a substantive right against the United States for money damages.

## Estoppel

■ Alternatively, the government argues that Trayco is estopped from seeking judicial review because it elected to challenge the penalty through administrative procedures and consequently received and paid a mitigated penalty. The government asserts that an importer, like Trayco, that wishes to challenge a penalty assessed by Customs must make an election of remedies. The importer may either seek judicial relief and forego the opportunity for an administrative remedy or elect to exhaust administrative remedies thereby foreclosing the opportunity for judicial review. Although the government concedes that the regulations are silent on this issue, it asserts that preclusion of judicial review where an importer elects to pursue administrative remedies is implicit in 19 C.F.R. § 171.32. The government argues that Customs' long-standing and consistent application of its regulations supports this position.

Further, the government argues that Trayco's actions of exhausting its administrative remedies manifested Trayco's intent to relinquish its rights to judicial review. In other words, having paid the mitigated penalty to avail itself of a third opportunity at administrative mitigation and to avoid an enforcement proceeding in the Court of International Trade, Trayco constructively entered into an accord and satisfaction with the government and is now estopped from contesting the mitigated penalty. The government argues that a contrary conclusion would frustrate Customs' reliance interest in agreeing to forego an enforcement action for the full amount of the penalty and consider further mitigation.

Trayco's position is that it never made an "agreement" with Customs to forego judicial review. Rather, in order to exhaust administrative remedies before seeking judicial review, Trayco conditionally paid the mitigated penalty "under protest, reserving all rights to judicial review." We conclude that Trayco is not estopped from seeking judicial review.

*First,* Trayco is not challenging the merits of Customs' decision denying its second supplemental petition or the merits of Customs' decision to reduce the amount of Trayco's penalty. It is well settled that decisions concerning mitigation and remission under 19 U.S.C. § 1618 are committed to the discretion of the executive and are not subject to judicial review. *ARCA Airlines, Ltda. v. United States,* 726 F.Supp. 827, 830 (S.D.Fla. 1989); *Griekspoor v. United States,* 433 F.Supp. 794, 799 (M.D.Fla.1977); *Kuehne & Nagel, Inc. v. United States,* 17 Cl.Ct. 11, 19 (1989). This case is distinguishable. In the cases cited by the government, the importers admitted the underlying facts out of which the penalties arose. In each case the importer entered negotiations with Customs to mitigate the amount of the penalty.

Trayco is not challenging the merits of Customs' decisions, but the legality of the underlying penalty. Trayco argues, and the district court found, that no factual basis for the penalty exists. The government did not appeal the findings of the district court, therefore we accept the district court's findings. Trayco has consistently argued that the boxes were properly marked. Trayco asserts that it never admitted any culpability or sought a reduction in penalty. Rather, Trayco initiated administrative proceedings in order to challenge the legality of the penalty and to eliminate the penalty in its entirety. Trayco was not seeking a reduction in the amount of a legal penalty, but the reversal of an illegal penalty.

The district court found that the boxes had been properly marked with the country of origin on 10 December 1986, the date Trayco's president certified to Customs that the boxes had been properly marked. Therefore, there is no legal basis for the penalty Customs assessed against Trayco under 19 U.S.C. § 1592(a), (c).

*Second,* Trayco concedes that a bilateral agreement to pay the mitigated penalty and forego judicial review would be binding. *See ITT Semiconductors v. United States,* 6 Ct. Int'l Trade 231, 576 F.Supp. 641 (1983). However, Trayco argues that there was never a meeting of the minds, a transaction, or any agreement between the parties to preclude Trayco's right to seek judicial review of the legality of the underlying penalty. In addition, Trayco argues that the government's unilateral decision to reduce the amount of the penalty does not constitute an accord and satisfaction.

Trayco was required, by regulation, to pay the mitigated penalty before Customs would accept its second supplemental petition. 19 C.F.R. § 171.33(c)(1). Trayco accompanied its payment with a letter expressly reserving its rights to judicial review. Customs accepted Trayco's payment with full knowledge of Trayco's reservation. We do not see how Trayco can be estopped from judicial review. To the contrary, we conclude that the parties constructively agreed that Trayco had every right to seek judicial review after it had exhausted its administrative remedies.

According to the government's analysis, Trayco could have obtained judicial review at any time before it paid the mitigated penalty and filed its second supplemental petition for review by sitting back and refusing to pay the penalty. Customs then could have filed suit for collection of the penalty in the Court of International Trade. Likewise, the government could have refused to accept Trayco's check reserving its rights to judicial review and its second supplemental petition and commenced an enforcement action in the Court of International Trade.

*Finally,* the statute and regulations are silent regarding the availability of (or preclusion of) judicial review after administrative remedies are exhausted. 19 U.S.C. § 1618; 19 C.F.R. § 171.33. In light of the fact that nothing in the statute or regulations gives notice that a party may relinquish its rights to judicial review by paying a mitigated penalty and filing a second supplemental petition, we decline to hold that Trayco is estopped where it accompanied its payment with a statement expressly reserving its rights to judicial review.

### Conclusion

A gap exists in the Court of International Trade's exclusive jurisdiction for an action brought by an importer against the United States for refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a), (c) (1988). The district court properly exercised jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). Trayco was not estopped from seeking judicial review of the underlying legality of a penalty assessed by the United States Customs Service because it paid the mitigated penalty under protest expressly reserving its rights to judicial review. The decision of the United States District Court for the District of South Carolina is *affirmed.*

*AFFIRMED.*