**PENTAX CORPORATION, a Delaware corporation, Plaintiff,**

v.

**Donald W. MYHRA, in his official capacity as District Director of Customs for the District of Great Falls, Montana, and United States Customs Service, an agency of the United States, Defendants.**

No. 92–064–GF.

United States District Court,
D. Montana,
Great Falls Division.

Jan. 27, 1994.

---

11. *Id.*

12. *Id.*

John D. Stephenson, Jardine, Stephenson, Blewett & Weaver, PC, Great Falls, MT, Charles H. Bayar, Harold Levy, Whitman & Ransom, New York City, for plaintiff.

George F. Darragh, Jr., Office of the U.S. Atty., Great Falls, MT, A. David Lafer, Stuart M. Gerson, U.S. Dept. of Justice—Civ. Div., Washington, DC, for defendants.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

The plaintiff, Pentax Corporation ("Pentax"), instituted the present action seeking pre-enforcement judicial review of an administrative decision by the U.S. Customs service ("Customs"). This matter is presently before this court on plaintiff's motion for preliminary injunction; defendants' cross-motion to dismiss plaintiff's complaint; and defendants' motion to dissolve injunction or, alternatively, clarify injunction and provide for security.

### BACKGROUND

Pentax is a major importer and distributor of photographic and optical equipment. From 1987 through 1991, Pentax filed documentation with Customs indicating certain merchandise was imported from Hong Kong when the country of origin for the merchandise was actually the Peoples Republic of China. In March 1991, Pentax disclosed the country of origin misstatements to Customs. Pentax contends it came forward under the "prior disclosure" provisions of 19 U.S.C. § 1592(c)(4), and therefore is entitled to seek mitigation of any import penalties associated with the country of origin misstatements.[1]

---

1. If an importer qualifies for prior disclosure treatment, potential import penalties are calculated under the mitigated penalty provisions in 19 U.S.C. § 1592(c)(4), rather than, the standard penalty provisions set forth in 19 U.S.C. § 1592(c)(1–3). Pentax's penalty exposure under the standard penalty provisions ranges from 3 million to 60 million dollars depending on its degree of culpability (negligence, gross negligence or fraud). Pentax's penalty exposure under the prior disclosure penalty provisions ranges from zero to 6 million dollars.

In order to secure prior disclosure treatment under 19 U.S.C. § 1592(c)(4) an importer must: 1) voluntarily disclose the country of origin misstatements prior to obtaining any knowledge that Customs commenced a formal investigation into the misstatements; and 2) pay customs the "actual loss of duties" suffered as a result of the misstatements. 19 C.F.R. §§ 162.74(a)(1) &

When Pentax disclosed its country of origin misstatements, Don Myhra, Customs District Director for the District of Great Falls, Montana, informed Pentax that unpaid "marking duties"[2] represent an "actual loss of duties" which must be paid as a precondition for prior disclosure treatment under 19 U.S.C. § 1592. The marking duties calculated by Pentax total $ 5,157,601.30. When Pentax received Mr. Myhra's actual loss of duties determination, Pentax applied for an administrative review.[3] Customs denied the application on the grounds that an actual loss of duties determination is not reviewable.[4] When Pentax requested further discussion on the issue, Customs refused. .

■ Thereafter, on April 20, 1992, Mr. Myhra notified Pentax, by letter, that Pentax had until May 5, 1992, to pay the marking duties if it desired prior disclosure consideration.[5] In lieu of making the payment, Pentax filed this action seeking judicial review of Mr. Myhra's actual loss of duties determination. On April 29, 1992, this court issued an order temporarily restraining Customs from enforcing the prior disclosure deadline set forth in Mr. Myhra's April 20, 1992, letter. Pentax now seeks an injunction preventing expiration of the May 5, 1992, payment deadline until the court completes its judicial review. Customs, on the other hand, seeks an order dismissing this action on the grounds the court lacks jurisdiction.

For the reasons stated below, the court GRANTS defendant's cross-motion to dismiss and DENIES plaintiff's motion for preliminary injunction.

## CROSS–MOTION TO DISMISS

■ Pentax seeks pre-enforcement judicial review of Mr. Myra's determination that marking duties must be paid as a precondition for prior disclosure treatment under 19 U.S.C. 1592(c)(4). Pentax premises its request for judicial review upon the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (generally cited as the "APA"), in conjunction with the court's federal question jurisdiction (28 U.S.C. § 1331). Customs urges the court to dismiss Pentax's action: 1) upon the grounds that the Court of International Trade ("CIT") has exclusive jurisdiction over this import-related action;[6] or 2) upon the

---

162.74(h). The phrase "actual loss of duties" is defined in 19 C.F.R. § 162.71(a)(1) as:
"... the duties of which the government *has been deprived* by reason of the violation in respect of entries on which liquidation had become final."
Liquidation occurs when Customs makes a final determination on the amount of duties owed on imported merchandise and the merchandise is released for distribution in the United States. 19 C.F.R. § 159.1.

2. Customs is required to collect a ten percent *ad valorem* duty ("marking duty") on imported merchandise entering the commerce of the United States with false country of origin markings. 19 U.S.C. § 1304.

3. Pentax sought an administrative review of Mr. Myhra's determination that unpaid "marking duties" represent an "actual loss of duties" for prior disclosure purposes. Pentax contends that the phrase "actual loss of duties" refers to the difference between: 1) the true duty liability based upon a true country of origin statement; and 2) the falsely reduced duty liability based upon a country of origin misstatement. The difference being the amount of money of which the government was *actually deprived* as a result of the country of origin misstatements. 19 C.F.R. § 162.71(a)(1). Pentax contends that no actual loss of duties resulted from Pentax's country of origin misstatements, because the duty liability for camera equipment imported from the Peoples Republic of China is precisely the same as the duty liability for camera equipment imported from Hong Kong.

In the opinion of Pentax, unpaid marking duties do not constitute an "actual loss of duties" because a marking duty is a special *ad valorem* duty that is not lost, but rather, arises as a result of a country of origin misstatement. 19 U.S.C. § 1304.

4. The application was apparently denied by the Director of the International Trade Compliance Division at Customs' headquarters.

5. If Pentax tenders the marking duties as calculated by Mr. Myhra, the payment is deemed to be voluntary, rather than a charge, and Pentax is prohibited from protesting or recovering the payment in a CIT action or other judicial proceeding. *Carlingswitch, Inc. v. U.S.*, 500 F.Supp. 223 (Ct.Int'l Trade 1980), *aff'd*, 651 F.2d 768 (CCPA 1981).

6. Although this opinion does not address this issue, the court notes that the CIT does not have exclusive jurisdiction over all import-related actions commenced by an importer. The CIT, like other specialized courts, "operates within precise and narrow jurisdictional limits" explicitly granted by Congress. *U.S. v. Biehl & Co.*, 3 Ct.Int'l

grounds that the "actual loss of duties" determination is not a final agency decision under the APA, and an adequate remedy exists in the CIT.[7]

The court does not find it necessary to reach the merits of Customs' arguments in determining whether this action should be dismissed. A summary dismissal of Pentax's action is proper in light of Congress' clear intent to preclude the requested interlocutory review.

### A. Did Congress Intend To Preclude The Requested Judicial Review?

■■■ 5 U.S.C. § 701(a) provides that the Administrative Procedure Act may be applied to agency action *except* to the extent that:

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

Trade 158, 539 F.Supp. 1218, 1221 (1982). The actions over which the CIT has exclusive jurisdiction are statutorily defined at 28 U.S.C. §§ 1581 & 1582. Section 1582 provides the CIT with exclusive jurisdiction over certain import-related actions *instituted by the United States against an importer.* Section 1581, subsections (a)–(i), provides the CIT with exclusive jurisdiction over certain import-related actions filed *against the United States.*

If a particular action is not listed under § 1581 or § 1582, the CIT does not have exclusive jurisdiction. *Trayco, Inc. v. U.S.*, 994 F.2d 832 (Fed. Cir.1993). In *Trayco*, an importer sought judicial review, in federal district court, of the propriety of an import penalty it paid to Customs under protest. Customs opposed the importer's choice of forum maintaining that the CIT had exclusive jurisdiction over all import-related matters. Contrary to Customs' position, the Federal Circuit concluded that since Congress did not explicitly grant the CIT exclusive jurisdiction over a suit for refund of an import penalty, the importer could seek judicial review in federal district court as long as the district court was vested with jurisdiction. The *Trayco* court determined that the district court had subject matter jurisdiction to review the import penalty pursuant to the Little Tucker Act—28 U.S.C. 1346(a)(2).

The Little Tucker Act provides that district courts have original jurisdiction, concurrent with the United States Court of Federal Claims over any civil action against the United States not exceeding $10,000, founded either upon the Constitution, federal statute or regulation of an executive department.

A preclusion of judicial review is proper if a statute expressly prohibits judicial review;[8] *or* if a statute provides clear and convincing evidence of a congressional intent to withhold judicial review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), citing H.R.REP. NO. 1980, 79th Cong., 2d Sess. 41 (1946), U.S.Code Cong.Serv.1946, at 1195. Under the latter approach, a court can look to:

"... the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."

*Block v. Community Nutrition Institute*, 467 U.S. 340,345, 104 S.Ct. 2450, 2453–54, 81 L.Ed.2d 270 (1984).

In the instant case, Congress' intent to prohibit the requested judicial review is evidenced by the fact that Congress provided (under 19 U.S.C. § 1592), a detailed and comprehensive procedural framework for ad-

In the case *sub judice*, Pentax challenges Customs "actual loss of duties" determination under 19 U.S.C. § 1592(c)(4). Since 28 U.S.C. 1581 does not explicitly grant the CIT with exclusive jurisdiction over such an action, jurisdiction could possibly rest with this court pursuant to 28 U.S.C. § 1331, if Pentax's action otherwise satisfied the judicial review requirements promulgated under the Administrative Procedure Act. However, as discussed below, the court concludes that the requested judicial review does not satisfy the requirements of the APA.

**7.** 5 U.S.C. § 704 provides in pertinent part that action by an administrative agency, like Customs, is reviewable by a federal district court only if the action is:

... *Final agency action* for which there is *no other adequate remedy in a court.* ...
(emphasis added).

The requirement of "final agency action" embodies a two-pronged test. (1) The agency action must be a *final decision* rather than a preliminary, procedural or intermediate; and (2) the agency action must be final in the sense that available avenues of review within the agency have been pursued and exhausted.

**8.** An example of an expressed preclusion of judicial review is the 1986 Superfund Amendments to the Comprehensive Environmental Response, Compensation, and Liability Act which expressly prohibit pre-enforcement judicial review of EPA administrative consent orders relating to hazardous waste cleanup. 42 U.S.C. § 9613; *Fairchild Semiconductor Corp. v. U.S. E.P.A.*, 769 F.Supp. 1553 (N.D.Cal.1991).

dressing controversies in connection with the imposition of import penalties, including the present controversy centering on whether marking duties must be paid as a precondition for prior disclosure treatment. The review process embodied in 19 U.S.C. § 1592 consists of a series of administrative reviews culminating with a *de novo* judicial review in the CIT.[9]

If Pentax seeks to challenge Mr. Myhra's determination, it may start by refusing to pay the requested marking duties. Customs is then required to investigate the country of origin misstatement and issue a prepenalty notice which includes, *inter alia*, Mr. Myhra's actual loss of duties determination. 19 U.S.C. § 1592(b)(1)(A)(vi). Upon receipt of the prepenalty notice, Customs must grant Pentax a reasonable opportunity to present oral and written objections to Mr. Myhra's determination. 19 U.S.C. § 1592(b)(1)(A)(vii). After considering Pentax's objections, Customs must determine whether a penalty claim should be issued. 19 U.S.C. § 1592(b)(2).

If a penalty claim is issued, Pentax shall have an opportunity to petition for remission or mitigation of the penalty. 19 U.S.C. § 1618. During this step, Pentax can again challenge Customs' determination that marking duties must be paid for prior disclosure treatment. 19 C.F.R. § 162.79(b). At the conclusion of the § 1618 mitigation proceeding, Customs must provide Pentax with a written statement setting forth Customs' final penalty determination, and the findings of fact and conclusions of law upon which the determination is based. 19 U.S.C. § 1592(b)(2). If the petition for mitigation or remission is decided to Pentax's satisfaction, the entire matter is resolved administratively without necessity for any court intervention. If the parties cannot reach an agreement as to the penalty amount due, Customs may request that the Department of Justice insti-

tute an enforcement action in the CIT pursuant to 28 U.S.C. § 1582(1).[10] If such an action is commenced, all penalty related issues are tried *de novo*. 19 U.S.C. § 1592(e). Pentax may submit any evidence, and advance any arguments relevant to its contention that Pentax should have been afforded prior disclosure treatment. *U.S. v. Fenderson, Inc.,* 658 F.Supp. 894, 900–901 (Ct.Int. Trade 1987).

▪ In enacting this detailed comprehensive scheme, Congress made no provision for an importer to initiate litigation challenging an interim agency decision, including Customs' determination that marking duties must be paid for prior disclosure consideration. If this court allows Pentax to short circuit the statutory procedure through an interlocutory judicial review, the procedure would be rendered meaningless.[11] Since 19 U.S.C. § 1592 affords Pentax a reasonable opportunity to challenge Mr. Myhra's determination, no basis exists for an interlocutory judicial review under the APA.

In an effort to persuade this court that 19 U.S.C. § 1592 does not bar the requested pre-enforcement judicial review, Pentax directs the court's attention to *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), in which the U.S. Supreme Court found that certain Food and Drug statutes did not preclude pre-enforcement judicial review under the APA. *Abbott* is distinguishable from the case *sub judice*.

In *Abbott,* several drug manufacturers sought judicial review of two regulations promulgated by the Food and Drug Commissioner for the purpose of implementing a 1962 amendment to the Federal Food, Drug and Cosmetic Act—21 U.S.C. § 301 et seq. The Act required manufacturers of prescription drugs to print the generic name of the drug prominently on all product labels in

---

**9.** The CIT, as predecessor to the U.S. Court of Customs, has specialized expertise in the area of import-related matters that is not possessed by a federal district court.

**10.** The CIT has exclusive jurisdiction over actions instituted by the United States to enforce import penalties. 28 U.S.C. § 1582.

**11.** The court will also be opening the door to an endless stream of piece-meal reviews on other interim agency decisions.

type at least half as large as that used for the proprietary name. *Id.*, 387 U.S. at 137–38, 87 S.Ct. at 1509–10. The drug manufacturers challenged the regulations on the grounds they exceeded their statutory authority by requiring the manufacturers to list the generic name, each time the established name appeared on a label or advertisement.

As its sole evidence that judicial review should be precluded, the government noted that the Food, Drug and Cosmetic Act expressly provided for judicial review of some implementing regulations, but was silent as to the two regulations at issue. In support of its decision to allow judicial review, the *Abbott* Court stated that the failure to expressly provide for judicial review, in and of itself, did not manifest a congressional intent to bar judicial review. *Id.*, 387 U.S. at 141, 87 S.Ct. at 1511.

Unlike *Abbott*, this case does not involve a situation where Congress failed to address the issue of judicial review. Rather, 19 U.S.C. § 1592 affirmatively sets forth a process to be followed in challenging an import penalty. While the court is cognizant that the procedure prescribed in 19 U.S.C. § 1592 may be inadequate in the eyes of Pentax,[12] this fact alone, does not compel the court to ignore controlling legislation, and offer Pentax an interlocutory judicial review. If Pentax seeks changes in the process by which import penalties are reviewed, it must direct its efforts at Congress.

IT IS HEREBY ORDERED that defendant's motion to dismiss be, and the same hereby is GRANTED. Plaintiff's motion for preliminary injunction is accordingly DE-

NIED. The temporary restraining order issued by this court on April 29, 1992, is dissolved. Having dismissed this action, defendants' motion to dissolve injunction or, alternatively, to clarify injunction and provide for security, is moot.

The Clerk of Court is directed to notify counsel for the respective parties of the entry of this order.

---

**12.** Pentax maintains that the statutory review process established in 19 U.S.C. § 1592 is inadequate as to Mr. Myhra's actual loss of duties determination because it places Pentax in a difficult dilemma. If Pentax tenders the actual loss of duties as calculated by Mr. Myhra, it may qualify for disclosure treatment, but it can not protest the payment in a subsequent administrative or judicial proceeding. *Carlingswitch, Inc. v. U.S.*, 500 F.Supp. 223 (Ct.Int'l Trade 1980), *aff'd* 651 F.2d 768 (CCPA 1981).

In order for Pentax to challenge Mr. Myhra's determination, Pentax must refuse to pay the actual loss of duties requested by Customs. When Pentax refuses to pay, Customs will no longer consider Pentax for prior disclosure treatment. The only way Pentax can regain prior

disclosure treatment is to prevail on the actual loss of duties issue in a CIT enforcement action. If Pentax loses on this issue in the CIT, Pentax cannot regain prior disclosure treatment by tendering the 5.2 million dollars at issue. Pentax will be required to pay the 5.2 million dollars in actual loss of duties, plus face higher *non-disclosure* § 1592(c) penalties.

In addition, Pentax's controller, Jan Williamson, states in her affidavit that when Customs issues a penalty notice for non-disclosure penalties, Pentax must report the claim to its auditors and lenders. In Ms. Williamson's opinion, this claim may cause banks to withhold the financing needed to maintain Pentax's operation, which ultimately could result in a bankruptcy.