**PENTAX CORPORATION,**
**et al., Plaintiffs,**

v.

**Lewellyn ROBISON, et al., Defendants.**

**Slip Op. No. 96–64.**
**Court No. 96–01–00067.**

United States Court of
International Trade.

April 15, 1996.

Charles H. Bayar, New York City, for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Elizabeth W. Newsom), Washington, DC, Kathleen Bucholtz, Chicago, IL and Dyann Medina, El Paso, TX, Regional Counsel, United States Customs Service, of counsel, for defendants.

## *OPINION*

RESTANI, Judge:

Pentax Corporation ("Pentax"), its parent company Asahi Optical Co., Ltd. ("AOC"), and AOC's wholly-owned subsidiary, Asahi Optical (International) Ltd. ("AOI") (collectively "Plaintiffs") filed actions seeking judicial review of a determination by the United States Customs Service ("Customs") that plaintiffs must pay $5,157,601.30 in alleged "actual loss of marking duties," plus accrued interest, to qualify for "prior disclosure" treatment under 19 U.S.C. § 1592(c)(4) (1988 & Supp. V 1993). Before the court is plaintiffs' motion for a preliminary injunction pursuant to USCIT Rule 65(a), requesting that the court enjoin defendants from requiring advancement of the duties pending judicial review of Customs' determination.[1] Defendants oppose plaintiffs' motion and move to dismiss plaintiffs' action for lack of subject matter jurisdiction.[2] A suit by the United States, arising out of the same transaction, to collect penalties has been consolidated with plaintiffs' action.

## BACKGROUND

Pentax is an importer and distributor of photographic and optical equipment and accessories. Pentax imports these products from AOC, located in Japan, and AOI, located in Hong Kong. Since 1972, Pentax has imported AOI products produced in Hong Kong with such country of origin markings. In 1987, however, AOI gradually began shifting production from Hong Kong to the People's Republic of China, yet AOI "continued to mark these products and describe them on invoices issued to Pentax as being of Hong Kong origin.". Pls.' Cons.Exs. in Supp. of Joint Application for T.R.O. [hereinafter Pls.' Consol.Exs.] at 2. Thus, subsequent Pentax imports of AOI products included goods produced in China, but neither the markings on the products, nor the invoices submitted with each shipment, nor the declaration made to Customs reflected this change of country of origin. Between July 7, 1987 and March 15, 1991, Pentax made approximately 300 entries of Chinese-made AOI products with Hong Kong origin markings, in violation of 19 U.S.C. § 1592(a) (1988 & Supp. V 1993).[3] The domestic value of this merchandise totaled nearly $60 million. On October 29, 1990, Customs' Regulatory Audit Division notified Pentax of its intention to conduct a formal audit of Pentax and its related foreign companies.

In order to qualify for reduced penalties for any violation that may ultimately be assessed against Pentax, by letters dated March 11, 1991, and April 10, 1991, Pentax made a "prior disclosure" to Customs, pursuant to 19 U.S.C. § 1592(c)(4), regarding its misstatements of the country of origin. That section provides formulas for calculating penalties at an amount much less than normal penalties if disclosure of the circumstances of a violation is voluntarily made "before, or

1. By consent, the United States and its officers and employees were so enjoined until the pending motion is decided.

2. Defendants counterclaim to enforce civil penalties and to recover unpaid duties pursuant to 19 U.S.C. § 1592. Plaintiffs move to dismiss the counterclaims on the ground that the court lacks subject matter jurisdiction. The counterclaims track the claims in the collection action consolidated herein.

3. Section 1592(a)(1) provides that:
   Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty thereby, no person, by fraud, gross negligence, or negligence—
   (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—
   (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
   (ii) any omission which is material, or
   (B) may aid or abet any other person to violate subparagraph (A).

without knowledge of, the commencement of a formal investigation of such violation." In addition, the person making prior disclosure is required to either "tender[ ] the unpaid amount of the lawful duties [of which the United States is or may be deprived,] at the time of disclosure, or within 30 days ... after notice by the Customs Service of its calculation of such unpaid amount." [4]  *Id.*  Pentax did not tender or offer to tender any monies at the time of disclosure.

By letter dated May 22, 1991 [hereinafter "Myhra Determination"], Customs informed Pentax of the "actual loss of marking duties" resulting from Pentax's violations, which Customs calculated at $5,157,601.30 according to 19 C.F.R. § 134.2 (1991).[5]  The Myhra Determination further required that, pursuant to 19 C.F.R. § 162.74(h), Pentax tender this amount within thirty (30) days in order to be considered for prior disclosure treatment.  Pentax appealed the Myhra Determination to Customs Headquarters on June 20, 1991, arguing that the "actual loss of marking duties" is not *"duties deprived as a result of"* its erroneous country of origin markings under the relevant statutory and regulatory provisions.  Pls.' Consol.Exs. at 11.  By letter dated November 20, 1991, Customs rejected Pentax's assertions, stating that

[m]arking duties are considered by Customs as duties lost as a result of a violation.  They accordingly are to be considered as an actual loss of duties required to be paid to complete the requirements of [19 U.S.C. § 1592(c)(4) ] and [19 C.F.R. § 162.71(e) ].  Therefore, [Pentax] must pay the actual loss of marking duties cited in [the Myhra Determination] before [it]

can be entitled to the requested prior disclosure consideration.

Pls.' Consol.Exs. at 17.  Customs did, however, grant an extension for tendering duties until December 20, 1991.

In response to Pentax's threat of suit, Customs again postponed the deadline for tendering duties.  Ultimately, by letter dated April 20, 1992, Customs reaffirmed its earlier position that Pentax was required to remit the $5.2 million in "actual loss of duties" in order to qualify for prior disclosure treatment.  *Id.* at 26.  Customs set a new deadline for the remittance of the monies for May 5, 1992, and further stated that

[f]ailure to pay by that deadline will preclude Customs from considering Pentax['s] submission under the prior disclosure provisions of 19 U.S.C. § 1592.

*Id.*  Pentax did not tender the requested duties.

Instead, Pentax filed an action in the United States District Court for the District of Montana, seeking judicial review of Customs' determination under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706 (1988), and a preliminary injunction pending such review.  The district court granted Customs' motion to dismiss, finding that "19 U.S.C. § 1592 afford[ed] Pentax a reasonable opportunity to challenge [Customs'] determination" and that "no basis exist[ed] for an interlocutory judicial review under the APA."  *Pentax Corp. v. Myhra,* 844 F.Supp. 611, 615 (D.Mont.1994), *aff'd,* 72 F.3d 708 (9th Cir. 1995).  The district court granted Pentax's motion for a preliminary injunction pending review on appeal, on the condition that Pentax deposit $5.2 million in the court registry

---

**4.** Customs' regulatory implementation of section 1592(c)(4) provides, *inter alia,* that:
A person who discloses the circumstances of the violation shall tender any actual loss of duties at the time of disclosure or within 30 days after the district director notifies the person in writing of his calculation of the actual loss of duties.  The district director may extend the period if he determines there is good cause to do so.
19 C.F.R. § 162.74(h) (1991).

**5.** Section 134.2 provides, in relevant part, that:
Articles not marked as required ... shall be subject to additional duties of 10 percent of the

final appraised value unless exported or destroyed under Customs supervision prior to liquidation of the entries provided in 19 U.S.C. 1304(f).  The 10 percent additional duty is assessable for failure either to mark the article (or container) to indicate the English name of the country of origin of the article or to include words or symbols required to prevent deception or mistake.  19 C.F.R. § 134.2.  This regulatory provision implements 19 U.S.C. § 1304(f) (1988), which provides for additional duties for failure to properly mark products.  *See infra* p. 198.

until the "actual loss of duties" issue was resolved. Pentax deposited this amount and filed a subsequent appeal to the Ninth Circuit Court of Appeals.

On January 12, 1995, Customs issued prepenalty notices [6] to Pentax individually, and to AOC and AOI jointly and severally, setting forth, *inter alia*, the amount of actual loss of duties required for prior disclosure treatment, as originally assessed in the Myhra Determination, and the proposed penalty allocated based on that amount. By letter of February 13, 1995, plaintiffs informed Customs that they would "not make any written or oral presentation in response to the ... prepenalty notices." Pls.' Consol.Exs. at 92.

On July 31, 1995, the Ninth Circuit held that the district court lacked subject matter jurisdiction and stated that Pentax's action arises under 19 U.S.C. § 1304(f) which imposes additional duties for Pentax's failure to correctly mark the country of origin; therefore, "if judicial review is available at all, [it] is available only in the Court of International Trade." *Pentax Corp. v. Myhra*, 72 F.3d 708, 710–11 (9th Cir.1995). Consequently, on January 12, 1996, plaintiffs' case was transferred to this court, along with the $5.2 million originally deposited in the registry of the district court.

Customs issued penalty notices on August 4, 1995, pursuant to 19 U.S.C. § 1592(b)(2), to Pentax individually for gross negligence, and AOC/AOI jointly and severally for fraud, reinstating the Myhra Determination that the disclosed violation entailed an "actual loss of duties" of $5,157,601.30, and demanding the payment pursuant to 19 U.S.C. § 1592(d) (Supp. V 1993). The assessed penalty for Pentax was $2,747,477.48 or, alternatively, $21,312,509.20, and for AOC/AOI $5,157,-601.30 or, alternatively, $59,925,849.41. The lower amount is applicable only if there is a finding of prior disclosure by Customs, and the funds on deposit, including accrued interest, are submitted to Customs within ten (10) calendar days after the funds are released by

order of the court. Plaintiffs again declined to submit a response to the penalty notices.

On February 13, 1996, the United States initiated an enforcement action in this court under 28 U.S.C. § 1582 (1994). Defendants filed an answer and counterclaims to plaintiffs' action, asserting entitlement to duties and penalties under § 1592, and alleging gross negligence or negligence against Pentax individually, and fraud, gross negligence, or negligence against AOC and AOI jointly and severally.

### DISCUSSION

#### I. Jurisdiction

Although defendants dispute the court's jurisdiction over importer-initiated actions under 19 U.S.C. § 1592, they contend that the court has jurisdiction to determine all issues relating to "prior disclosure" under 19 U.S.C. § 1592(c)(4) in an enforcement action, such as the one consolidated herein. Thus, the issue of whether pre-enforcement review is available has been mooted, and the court need not decide whether cases such as *Playhouse Import & Export, Inc. v. United States*, 843 F.Supp. 716 (Ct.Int'l Trade 1994) (denying pre-enforcement review), and *Dennison Mfg. Co. v. United States*, 12 CIT 1, 678 F.Supp. 894 (1988) (same), are distinguishable from the present action.

■ The parties are not in total agreement as to the scope of the court's jurisdiction, even in an enforcement action. *Trayco, Inc. v. United States*, 994 F.2d 832, 837–38 (Fed.Cir.1993), recognized a Tucker Act remedy (*see* 28 U.S.C. § 1346(a)(2) (1994)) for recovery of *penalties* paid in mitigation proceedings under 19 U.S.C. § 1592. It did not determine whether there was a remedy with respect to *duties* tendered to obtain prior disclosure treatment or in which court suits for such a remedy may be commenced.

*Shiepe v. United States*, 866 F.Supp. 1430, 1432–33 (Ct.Int'l Trade 1994), and *Miami Free Zone Corp. v. United States*, 17 CIT 687, 692, 826 F.Supp. 526, 530 (1993), both

---

**6.** Section 1592(b)(1) of Title 19, United States Code, grants Customs authority to issue notice of "its intention to issue a claim for a monetary penalty" if it "has reasonable cause to believe

that there has been a violation of [§ 1592(a)] and determines that further proceedings are warranted." 19 U.S.C. § 1592(b)(1) (1988 & Supp. V 1993).

seem to conclude that *Trayco* limits importer-initiated penalty refund suits to the district courts or the Court of Federal Claims under the Tucker Act. *Shiepe*, in addition, makes clear that the *Carlingswitch v. United States*, 500 F.Supp. 223, 227 (Cust.Ct.1980) (holding that neither importer's voluntary tender of mitigated penalty, nor Customs subsequent refusal to refund monies tendered, was an "exaction" under 19 U.S.C. § 1514 for purposes of establishing jurisdiction), *aff'd*, 651 F.2d 768 (C.C.P.A.1981), line of cases must be viewed more narrowly than it might have been pre-*Trayco*. *See Shiepe*, 866 F.Supp. at 1433. Thus, amounts paid in mitigation proceedings may be recoverable and cannot always be considered voluntary. Further, it is by no means clear that, while pre-*Trayco* a penalty refund suit might have been viewed as a "new cause of action" for which jurisdiction would not lie under 28 U.S.C. § 1581,[7,8] the same conclusion should be reached after *Trayco*. *But cf. Miami Free Zone Corp.*, 17 CIT at 691–93, 826 F.Supp. at 529–30 (reaching same result as *ITT Semiconductor* (*see supra* note 7)). At least, suits challenging the legality of the penalty, rather than the merits of the mitigation decision, must not be "new" causes of action, but must be cognizable in some court, because *Trayco* recognized them as Tucker Act causes of action. *See Trayco*, 994 F.2d at 838; *see also Miami Free Zone Corp.*, 17 CIT at 692, 826 F.Supp. at 530.

This court, having jurisdiction of the enforcement action, likely would have compulsory counterclaim jurisdiction over a penalty refund claim which, if brought only by plaintiffs originally, might have been heard elsewhere. Whether an importer-initiated suit for return of § 1592 duties, as opposed to penalties, follows the same route is not clear. Certainly the Ninth Circuit would seem to recognize this court's exclusive jurisdiction with regard to any such action which did exist. *See Pentax Corp. v. Myhra*, 72 F.3d at 710–11. Imposition of the duties involves both 19 U.S.C. § 1304(f) and 19 U.S.C. § 1592(a) & (d), which would seem to implicate the court's jurisdiction to resolve issues of enforcement and administration with respect to duties. *See* 28 U.S.C. § 1581(i)(1), (2) & (4). Both parties, however, while conceding this court's jurisdiction to declare the law as to prior disclosure treatment under the current case posture, seem in great doubt as to whether any court actually could order refund of duties tendered to acquire prior disclosure treatment.

The court does not consider the matter insurmountable. The court has jurisdiction to declare the law as to the requirements of prior disclosure. If a duty refund claim exists at law, at least, it may be pleaded as a counterclaim. If, ultimately, the court is wrong and funds are tendered which need not have been advanced, there may be a right to refund. If not, it is the effect of the statutory scheme. In any case, plaintiffs will obtain judicial review before they are forced to choose between, on one hand, tendering duties, the remedies for wrongful collection of which are somewhat cloudy, and, on the other hand, risking imposition of penalties as high as $70 million. The parties have not asserted in these circumstances that such a choice implicates *Ex Parte: Young*, 209 U.S. 123, 148, 28 S.Ct. 441, 449, 52 L.Ed. 714 (1908) (parties cannot be forced to submit themselves to extraordinary penalties in or-

---

7. *See ITT Semiconductors v. United States*, 6 CIT 231, 236–38, 576 F.Supp. 641, 645–46 (1983) (no 28 U.S.C. § 1581(a) jurisdiction because mitigation amount not a charge or exaction under 19 U.S.C. § 1514; no 28 U.S.C. § 1581(i) jurisdiction because no new cause of action created thereunder).

8. In addition to the exclusive jurisdiction conferred upon the court under 28 U.S.C. § 1581(a)–(h), Congress has granted the court, under 28 U.S.C. § 1581(i) (1994):

[E]xclusive jurisdiction of any civil action commenced against the United States, its agencies,

or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) *administration and enforcement with re*spect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

der to obtain judicial review). Accordingly, jurisdiction attaches.

Because no factual issues need be resolved and the legal issues have been fully briefed, the court will decide the issue raised by plaintiffs' motion finally as opposed to preliminarily. Thus, only the merits of plaintiffs' prior disclosure argument remain at issue.

II. Prior Disclosure

Country of origin markings are required of imported goods. 19 U.S.C. § 1304(a) (1988); 19 C.F.R. § 134.11 (1991). An importer which has mismarked the country of origin of imported merchandise is subject to additional duties of ten percent of the value of the merchandise imported. 19 U.S.C. § 1304(f); 19 C.F.R. § 134.2. Here, Pentax, AOC and AOI imported or caused to be imported into the United States photographic and optical merchandise produced in China that were marked "Hong Kong" as their country of origin. Thus, such acts violated the marking requirement and entailed a statutory ten percent additional duty.

▉▉▉ Additionally, the statute expressly prohibits any person, by fraud, gross negligence, or negligence, from entering any merchandise into the United States by means of material and false documentation or statements, nor may any person aid and abet another to commit such a violation. 19 U.S.C. § 1592(a)(1). Further, 19 C.F.R.' § 141.81 (1991) requires that "[a] special summary invoice, or a commercial invoice, ... be presented for each shipment of merchandise at the time the entry summary is filed." Pentax declared the goods to Customs to be of Hong Kong origin. Such misstatement also appeared on the invoices accompanying the merchandise. Plaintiffs do not dispute that a violation of 19 U.S.C. § 1592(a) has occurred.[9] A violation may exist "[w]ithout regard to whether the United States is or may be deprived of all or a portion of any lawful duty." 19 U.S.C. § 1592(a). "[I]f the United States has been deprived of *lawful duties,* ... as a result of a violation of [§ 1592(a) ]," section 1592(d) provides that Customs "shall require that such *lawful duties,* ... be restored, *whether or not a monetary penalty is assessed.*" *Id.* § 1592(d) (emphasis added). Plainly, the lawful duties are due and payable regardless whether other penalties are also assessed. Plaintiffs, however, refuse to pay the duties, arguing that as China and Hong Kong are both "Column 1" countries, the violation did not affect the assessment of duties; therefore, the government has not been deprived any lawful duties. This argument is meritless.

Plaintiffs do not attach enough importance to 19 U.S.C. § 1304(f) which is entitled "Additional duties for failure to mark" and provides, in part:

> If at the time of importation any article (or its container, ...) is not marked in accordance with the requirements of this section, ... there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, *shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause.* Such duty shall be levied, collected, and paid *in addition to any other duty* imposed by law and whether or not the article is exempt from the payment of ordinary customs duties.

*Id.* (emphasis added). Clearly, as a consequence of the failure to correctly mark the country of origin on the imported merchandise, additional duties at ten percent of the value of such merchandise are owed. The court is not persuaded by plaintiffs' argument that "[o]n its face, the non-avoidance language [of § 1304(f) ] applies only to. the payment of marking duties that have been 'levied' on liquidation." Pls.' Reply Mem. at

---

9. Duties are owed under 19 U.S.C. § 1592(d) whether or not the violation was committed by a party other than those involved in this action. *United States v. Blum,* 858 F.2d 1566, 1569 (Fed. Cir.1988) (interpreting "the authority of the United States to seek lost import duties under [§ 1592(d) ] as not limited to those parties that have violated [§ 1592(a) ] but as extending to those parties who may have been deemed responsible for the lawful duties had such duties lawfully been imposed"). Nowhere in their papers have plaintiffs asserted that some level of 19 U.S.C. § 1592(a) violation did not occur.

48. Just the opposite, § 1304(f) states that the point of time when marking duties are deemed accrued is the time of importation. Liquidation is not at issue in § 1304(f). The effects of liquidation are dealt with elsewhere, such as in 19 U.S.C. § 1592(d). In *United States v. Ross,* 6 CIT 270, 574 F.Supp. 1067 (1983), the court noted that:

> [Section 1592(d) ] was added by the Customs Procedural Reform and Simplification Act of 1978, Pub.L. No. 95–410, § 110(a), 92 Stat. 888, 896, in order to remedy the problems relating to the finality of liquidations. The United States, pursuant to § 1592(d), may seek the restoration of duties even though *a particular entry and liquidation have become final* within the meaning of 19 U.S.C. § 1514(a) (1982).

*Id.* at 271 n. 1, 574 F.Supp. at 1068 n. 1 (emphasis added).

Most importantly, the express language of § 1304(f) construing the additional duties so assessed as non-penal brings it within the meaning of "lawful duty" under § 1592(a)(1) and § 1592(d). This lawful duty is separate and distinct from, and should not be confused with, the additional penalty that may be assessed under section 1592(c).

Plaintiffs further assert that "deprivation of duties" under § 1592(c)(4) must be caused by the § 1592 violation. First, this assertion lends support to the interpretation of "lawful duty" upon which § 1592(c)(4) penalty calculation is based. Second, it is the continuation of the § 1592(a) violation which deprived the government of duties. Had the faulty markings been revealed before liquidation marking duties would have been collected under 19 U.S.C. § 1304(f).

█ Plaintiffs' further "real world" arguments are unpersuasive: First, plaintiffs argue that in the "real world," instead of assessing a ten percent marking duty on liquidated merchandise for plaintiffs' failure to correctly mark the imported merchandise, plaintiffs maintain that according to 19 C.F.R. § 134.51(a),[10] Customs "would have notified the importer, Pentax, to remark, export or destroy the goods." Pls' Reply Mem. at 40. Second, plaintiffs argue that "Customs would have detained in Customs['] custody any mismarked shipments.... [pursuant to] 19 C.F.R. § 134.3(a).[11] ... Pentax would have remarked these detained goods ... and so would not have incurred marking duties on *those ensuing entries." Id.* Third, at oral argument plaintiffs asserted that if duties had been assessed on liquidation of the first entry, they would have noticed the mismarking problem and almost all of the entries would have been marked properly. The court fails to see the merit of plaintiffs' arguments.

First, merchandise need not remain in the importers' or Customs' control between entry and liquidation. Goods are released immediately under bond. Plaintiffs do not assert that they can establish, at this time, that unusual fact patterns would have existed as to any particular entry which would have kept the goods in Customs, or even their own, control. Second, it is undisputed that plaintiffs informed Customs of the violations after all of the subject merchandise was liquidated. It is also undisputed that the assessment of the additional duties was based solely on merchandise already liquidated. Thus, plaintiffs can only speculate about other scenarios. Whatever remedy might have existed under either 19 C.F.R. § 134.51(a) or 19 C.F.R. § 134.3(a), or was in plaintiffs' own control, to cure plaintiffs' mistakes is not shown to have been available in the instant case.

Plaintiffs' assertion that defendants have been deprived of no lawful duty flies in the

---

10. Section 134.51(a) provides that:

When articles or containers are found upon examination not to be legally marked, the district director shall notify the importer ... to arrange with the district director's office to properly mark the article or containers, or to return all released articles to Customs custody for marking, exportation, or destruction.
19 C.F.R. § 134.51(a) (1991).

11. Section 134.3(a) provides:

Any imported article (or its container) held in Customs custody for inspection, examination, or appraisement shall not be delivered until marked with its country of origin, or until estimated duties payable under 19 U.S.C. 1304(f), or adequate security for those duties (see § 134.53(a)(2)), are deposited.
19 C.F.R. § 134.3(a) (1991).

**200**

face of both the statutory language of 19 U.S.C. § 1304(f) and 19 U.S.C. § 1592(d) and common sense. Plaintiffs' position would defeat the statutory purpose of promoting correct markings of imported goods. They would have the court hold that an importer has a freehand in declaring and marking the country of origin to its benefit and convenience as long as it can disguise the problem until after liquidation.

Consumers choose merchandise for particular reasons. Country of origin may very well be the deciding factor. By mismarking the merchandise, plaintiffs deprived consumers of their choice to buy or avoid goods from certain countries. If a person prefers to purchase a camera made in China, he or she is not given the choice to purchase plaintiffs' products even if they are among the goods to be chosen from. Conversely, if a person does not desire to purchase a Chinese-made camera, he or she may be misled into buying plaintiffs' products, thereby defeating his purpose.

Marking duties may be viewed as analogous to "liquidated damages" in that they may compensate for whatever difficult to compute damage is caused by permitting mismarked goods to enter the commerce of the United States. By concealing the mismarking until after the time the merchandise entered into such commerce, the § 1592 violation deprived the United States of marking duties, which would have been collected upon discovery. While the § 1592(a) violation caused the duties to accrue, its continuation both before and after liquidation also caused the deprivation of the duties. In order to be entitled to prior disclosure treatment under 19 U.S.C. § 1592(c)(4), plaintiffs must tender the lawful marking duties owed.

### CONCLUSION

To receive prior disclosure treatment, within ten days hereof plaintiffs must authorize the release of the funds in the court's control to Customs. The preliminary injunction will expire at such time.