**Slip Op. 02-33**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____ :

BYUNG WU LEE,                                            :

                    *Plaintiff,*                         :

          v.                                             :          Court No. 97-12-02192

                                                         :

UNITED STATES,                                           :

                    *Defendant.*                         :

_____ :

[Plaintiff's motion for judgment on agency record to set aside revocation of customhouse broker's license denied, and action dismissed.]

Decided: March 29, 2002

Peter S. Herrick for Plaintiff.

Robert D. McCallum, Jr., Assistant Attorney General; Joseph I. Liebman, Attorney-In-Charge, and John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Aimee Lee and Arthur J. Gribbin); David Fleck, Office of Associate Chief Counsel, U.S. Customs Service, Of Counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

Plaintiff Byung Wu Lee ("Mr. Lee") initiated this action pursuant to 19 U.S.C. § 1641(d)(2)(B) to contest the decision of the Secretary of the Treasury ("Secretary") revoking his customhouse broker's license. Mr. Lee has moved for judgment on the agency record under U.S. CIT Rule 56.1 to set aside the Secretary's decision. For the reasons that follow, Mr. Lee's motion is denied, and the Secretary's decision is affirmed.

## I. **Background**

The United States Customs Service ("Customs"), a bureau of the Department of the Treasury,

issued a broker's license to Mr. Lee on August 12, 1987. Agency Record ("A.R.") 17 at 4. On two

separate occasions in the years that followed, Customs assessed monetary penalties against him for

various violations of applicable statutes and regulations. On both occasions, he failed to pay the

penalties within 60 days of their assessment.

Mr. Lee's failures to make timely payment themselves constituted new breaches of Customs

regulations – specifically, 19 C.F.R. §§ 111.29 and 111.94.[1] Invoking 19 C.F.R. § 111.53,[2] Customs

---

[1]The 60-day requirement is set forth in 19 C.F.R. § 111.94, which requires that, where Customs makes a final determination that a broker is liable for a monetary penalty, the broker "must pay the monetary penalty, or make arrangements for payment of the monetary penalty, *within 60 calendar days of the date of the written decision*." 19 C.F.R. § 111.94 (emphasis added).

19 C.F.R. § 111.29, in turn, requires that a broker "exercise due diligence in making financial settlements, in answering correspondence, and in preparing or assisting in the preparation and filing of records relating to any customs business matter handled by him as a broker. *Payment of duty tax, or other debt or obligation owing to the Government for which the broker is responsible, . . . shall be made to the Government on or before the date that payment is due*." 19 C.F.R. § 111.29 (emphasis added).

For purposes of this opinion, citations to the Code of Federal Regulations generally refer to the 1991 or 1993 edition, as appropriate, unless otherwise noted. The regulations at issue here are identical in the two editions.

Similarly, except as otherwise noted, statutory citations herein generally are to the 1994 version of the U.S. Code.

[2]19 C.F.R. § 111.53 authorizes license revocation proceedings in any case where "(c) The broker has violated *any provision of any law enforced by Customs or the rules or regulations issued under any such provision*." 19 C.F.R. § 111.53 (1995) (emphasis added).

sought revocation of Mr. Lee's license based on the new charges. The specific facts underlying the new charges were set forth in two so-called "specifications" in the administrative proceedings which ultimately resulted in the decision to revoke Mr. Lee's license, and which are at issue here.

## A. Specification I

On August 16, 1990, Customs issued to Mr. Lee a Notice of Intent to Issue Monetary Penalty, advising that Customs was considering assessing a $1,000 penalty against him. That "$1,000 Pre-Penalty Notice" charged Mr. Lee with failure to exercise responsible supervision and control over Customs business conducted (a violation of 19 U.S.C. § 1641(b)(4) ) and with failure to obtain a power of attorney before transacting Customs business for a principal (a violation of 19 C.F.R. § 141.46). A.R. 17 at 6.

Through counsel, Mr. Lee responded to the $1,000 Pre-Penalty Notice on September 13, 1990, contesting Customs' allegations and urging that the agency take no further action. A.R. 17 at 7-8. Customs considered but rejected Mr. Lee's arguments and, on January 15, 1991, issued a Notice of Penalty for $1,000 (the "$1,000 Penalty Notice"). A.R. 17 at 9. Mr. Lee responded to the notice through counsel on February 8, 1991, requesting "administrative relief" from the penalty. A.R. 17 at 13-14. After consideration of that second response, Customs rendered its final determination on October 10, 1991 ("Final Determination I"), mitigating the penalty to $250. A.R. 17 at 15.

Customs sent demand letters in November 1991 and in January, March, and April 1992. A.R. 17 at 17, 20, 23, 26. However, Mr. Lee failed to respond. Only after the matter had been forwarded to the Department of Justice for collection did Mr. Lee pay the $250 – in January 1993, well more than a year after Customs' Final Determination I. A.R. 17 at 27-28.

## B. Specification II

In the meantime, on December 7, 1992, Customs had issued to Mr. Lee another Notice of Intent to Issue Monetary Penalty. That notice (the "$30,000 Pre-Penalty Notice") advised that Customs was considering assessing a $30,000 penalty against Mr. Lee for a laundry list of violations of applicable statutes and regulations identified in an agency audit of his books and records conducted in March 1992.[3] A.R. 17 at 29-33.

Mr. Lee filed no response to the $30,000 Pre-Penalty Notice. *See* A.R. 9, Recommended Decision and Order of Administrative Law Judge John M. Frysiak, *In the Matter of Customs Broker's License Revocation of Byung Wu Lee* ("ALJ Decision") ¶ 10. After considering the applicable laws and regulations, Customs issued a Notice of Penalty for $30,000 dated January 12, 1993 (the "$30,000 Penalty Notice"). A.R. 17 at 34. In the absence of any submission or other response from Mr. Lee, that determination was deemed to be the agency's final determination ("Final Determination II"). ALJ Decision ¶¶ 11, 23.

---

[3]Specifically, the $30,000 Pre-Penalty Notice cited Mr. Lee for failure to exercise responsible supervision and control over Customs business conducted (a violation of 19 U.S.C. § 1641(b)(4) ); for violation of "any provision of any law enforced by the Customs Service or the rules or regulations issued under any such provision" (a violation of 19 U.S.C. § 1641(d)(1)(C) ); for failure to maintain records in the prescribed format (a violation of 19 C.F.R. § 111.22); for failure to timely provide employee information (a violation of 19 C.F.R. § 111.28); for failure to exercise due diligence in the conduct of financial affairs and failure to notify clients of responsibilities and liabilities for Customs charges (a violation of 19 C.F.R. § 111.29(a)-(b) ); for utilization of a fictitious name without the requisite approval (a violation of 19 C.F.R. § 111.30(c) ); and for failure to maintain valid powers of attorney for his principals (a violation of 19 C.F.R. § 141.46). A.R. 17 at 29-30.

Customs sent demand letters in March, April and May 1993. A.R. 17 at 39, 46, 53. Customs' final demand for payment, dated December 15, 1993, offered to explore settlement possibilities. A.R. 17 at 60. The letter also warned Mr. Lee that, absent a response by December 24, 1993, the matter would be forwarded to the Justice Department for collection and action might be taken against his broker's license. *Id.* Mr. Lee failed to pay the penalty or otherwise respond to Customs' letter. ALJ Decision ¶ 25.

### C. The Collection Action and The License Revocation Proceeding

Seeking to collect the $30,000 penalty, the Justice Department brought suit against Mr. Lee in this Court. The collection action, captioned <u>United States v. Byung Wu Lee</u>, Court No. 95-08-01075, was filed August 23, 1995. *See* A.R. 23.

In parallel with the Justice Department's prosecution of the collection action in this forum, Customs took action at the administrative level, commencing preliminary proceedings to revoke Mr. Lee's broker's license, based on his failure to timely pay the assessed penalties. The Commissioner of Customs approved the initiation of those proceedings on December 7, 1995, pursuant to 19 C.F.R. § 111.53(c), which authorizes license suspension or revocation proceedings where a broker has "violated any provision of any law enforced by Customs or the rules or regulations issued under any such provision." A.R. 28; *see also* 19 C.F.R. § 111.53(c) (1995).

Customs issued a Notice of Preliminary Proceedings and a Proposed Notice to Show Cause and Statement of Charges ("Proposed Notice to Show Cause") on December 27, 1995. *See* A.R. 26 at 1; A.R. 27 at 1. The Proposed Notice to Show Cause informed Mr. Lee of the charges against him

in two specifications. A.R. 27 at 2. Specification I concerned Mr. Lee's failure to pay the mitigated penalty of $250 within 60 days of Customs' Final Determination I, issued October 10, 1991; Specification II concerned his failure to pay the $30,000 penalty within 60 days of Customs' Final Determination II, issued January 12, 1993. In both instances, the failures to make timely payment were cited as violations of 19 C.F.R. §§ 111.29 and 111.94. The Proposed Notice to Show Cause noted that – almost three years after Customs' Final Determination II – Mr. Lee still had not paid the $30,000 penalty. *Id.*

By letter from counsel dated January 29, 1996, Mr. Lee requested that the license revocation proceeding be held in abeyance pending resolution of the collection action. A.R. 25. Customs denied the request for an abeyance, but granted Mr. Lee additional time to respond to the proposed charges in the revocation proceeding. A.R. 24.

In a March 4, 1996 submission, Mr. Lee argued that the statute of limitations had expired for the violations which are the basis for Specification I, and that Specification II was "covered" by the $30,000 collection action he was then contesting. A.R. 20. The submission also incorporated by reference Mr. Lee's answer, affirmative defenses, and response to the request for admissions filed in the collection action. A.R. 21-22.

In a supplemental submission dated May 13, 1996, Mr. Lee argued that Customs could not proceed in a revocation action because it was already suing him to collect a penalty based on the

same facts.  A.R. 19 at 1.  The Commissioner of Customs rejected that argument and authorized the institution of formal revocation proceedings on June 14, 1996.[4]  A.R. 18.

The formal revocation proceedings commenced on August 13, 1996, with Customs' issuance of a Notice of Revocation Proceedings and a Notice to Show Cause and Statement of Charges ("Notice to Show Cause").  *See* A.R. 16; A.R. 17.  Among other things, those documents informed Mr. Lee of his right to file an answer to the charges, his right to be represented by counsel at the formal revocation proceedings, and his right to cross-examine witnesses.  A.R. 16 at 1.

### D.  The Administrative Hearing and The Decision of the Secretary

The license revocation hearing was conducted before an administrative law judge ("ALJ") on September 11, 1996.  ALJ Decision ¶ 5.  In his Recommended Decision and Order dated December 16, 1996, the ALJ made findings of fact and drew conclusions of law concerning both Specifications I and II, as well as the non-payment of penalties.  *See generally* ALJ Decision.

Based on the record developed before him, the ALJ found that Mr. Lee was on notice that he owed the $250 penalty assessed against him on October 10, 1991, but chose not to pay or otherwise resolve it.  ALJ Decision ¶ 24.  The ALJ further found that Mr. Lee did not resolve the $250 penalty until January 1993 – well more than 60 days following Customs' Final Determination I, and only after a number of demands had issued and the case had been forwarded to the Justice Department for collection.  *Id.*

Based on the record, the ALJ similarly determined that Mr. Lee was on notice that he owed

---

[4]The Government, in its discretion, dismissed the collection action in May 1997.  A.R. 3.

the $30,000 penalty assessed on January 12, 1993, but again chose not to make timely payment or

otherwise respond to Customs or resolve the penalty, which – as the ALJ noted – still remained

unpaid.  *Id*.  ¶ 25.

The ALJ therefore concluded that Customs had met its burden of proof to establish the

alleged violations.  Specifically, he determined that:

> [Customs] . . . proved by a preponderance of the evidence that Mr. Lee twice violated
> 19 C.F.R. § 111.29 as set forth in Violation I, Specifications I and II of the Charges;
> and . . . twice violated 19 C.F.R. § 111.94 as set forth in Violation II, Specifications
> I and II of the Charges.

*Id.* ¶ 26.  The ALJ further noted:

> Warning notices of a variety of deficiencies were issued to Mr. Lee. Although
> informed in each letter that he could contact the broker compliance unit, Mr. Lee
> failed to respond in any way to any of these notices.  Mr. Lee's continued course of
> ignoring and disregarding the Customs Service when problems were brought to his
> attention, as evidenced by the three warning notices and his action regarding the two
> penalties, demonstrates gross irresponsibility in the performance of his duties.  The
> evidence also demonstrates that he failed to improve his performance despite
> repeated communications from Customs and the imposition of disciplinary measures
> including monetary penalties.

*Id*. ¶ 27 (citation omitted).  The ALJ therefore recommended that Mr. Lee's license be revoked.  ALJ

Decision at ¶ 29.

The Secretary of the Treasury adopted the ALJ's recommendation and revoked Mr. Lee's

license on September 16, 1997.[5]  The Commissioner of Customs notified Mr. Lee of the Secretary's

decision by mailing a Notice of Revocation to Mr. Lee on November 3, 1997.  *See* Letter to P.

---

[5]The Secretary's decision – entered on his behalf by the Acting Deputy Assistant Secretary
for Regulatory, Tariff & Trade Enforcement – is included as an Addendum to the certified list filed
with the agency record pursuant to U.S. CIT Rule 72(a).

Herrick from Deputy Assistant Secretary of Treasury (Dec. 21, 1997) (advising of mailing of Notice

of Revocation), *attached to* Letter from P. Herrick to Court (March 21, 2002) *and* Defendant's

Supplemental Submission As Requested By The Court (March 22, 2002) ("Defendant's

Supplemental Submission").

Mr. Lee filed this action to appeal the Secretary's decision.[6]

---

[6]Under 19 U.S.C. § 1641(e)(1), a decision by the Secretary to revoke a customs broker's license may be appealed by commencing an action in this Court "within 60 days after the issuance of the decision or order." 19 U.S.C. § 1641(e) (1994). *See also* 28 U.S.C. § 2636(g) (barring action to contest denial or revocation of broker's license unless commenced in accordance with CIT Rules within 60 days after date of entry of Secretary's decision or order). However, there are conflicting statutory provisions as to precisely how an action is commenced. *See generally* Defendant's Supplemental Submission at 1-5.

Under 19 U.S.C. § 1641(e)(1), an action is commenced by the filing of "a written petition," a copy of which is to be "transmitted promptly by the clerk of the court to the Secretary or his designee." In contrast, 28 U.S.C. § 2632(a) requires the concurrent filing with the Court of "a summons and complaint," which must then be served upon the Government in accordance with U.S. CIT Rule 4(i). Recognizing the statutory inconsistency, the Practice Comment to U.S. CIT Rule 3 advises that the "preferred procedure to achieve uniformity and consistency and to minimize the ambiguity . . . is to follow the provisions in Title 28."

Under 19 U.S.C. § 1641(e)(1), Mr. Lee had until January 2, 1998 – 60 days from November 3, 1997 – to file a petition appealing the revocation of his license. On December 31, 1997, he filed a "Petition for Review" and a "Summons" with the Court. There is no docket entry to indicate whether the Clerk of the Court transmitted a copy of the petition and summons to the Secretary. On February 3, 1998, counsel for the Government wrote to counsel for Mr. Lee, acknowledging the filing of the petition and summons with the Court but noting that Mr. Lee had failed to serve the United States as required by U.S. CIT Rule 4(i). *See* Letter to P. Herrick from A. Lee (Feb. 3, 1998), *attached to* Defendant's Supplemental Submission. At some point thereafter, the office of the Clerk of the Court advised Mr. Lee's counsel of the need to file a summons and complaint and to properly serve the United States. However, Mr. Lee's petition (filed on December 31, 1997) was never rejected by the Clerk of the Court. Mr. Lee filed his summons and complaint on March 10, 1998, and served them on the United States two days later. *See* Defendant's Supplemental Submission.

Mr. Lee's petition and summons were timely filed under 19 U.S.C. 1641(e)(1); but the summons and complaint filed on March 10, 1998 were not. In any event, under the circumstances,

## II. Jurisdiction and Standard of Review

Jurisdiction in this matter is predicated on 28 U.S.C. § 1581(g), which accords the Court exclusive jurisdiction over any action contesting the revocation of a customs broker's license. *See also* 19 U.S.C. § 1641(e).

Mr. Lee seeks to have the decision of the Secretary of the Treasury revoking his license set aside. *See* Complaint.[7]  However, in a case such as this, the Court's role is limited.  "[T]he Court may not substitute its judgment for that of the agency," but rather is only to "assure itself the decision was rational and based on consideration of relevant factors." Barnhart v. U.S. Treasury Dep't, 9 CIT 287, 290, 613 F. Supp. 370, 374 (1985).  Thus, the Court may not second-guess the agency's choice of sanctions: "When the penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency." *Id*. at 291, 613 F. Supp. at 374 (*quoting* Tempo Trucking and Transfer Corp. v. Dickson, 405 F. Supp. 506, 514 (E.D.N.Y. 1975) ) (citation omitted).

In short, the Secretary's decision here must be affirmed unless the underlying findings of fact are unsupported by substantial evidence on the record, or unless the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  *See* 5 U.S.C. §§ 706(2)(A), 706(2)(E); Tarnove v. Bentsen, 17 CIT 1324 (1993).

---

the Government has not interposed a statute of limitations defense. *Id*.  Accordingly, the Court may properly reach the merits of the case.

[7]As discussed in section III.A immediately below, Mr. Lee has also asserted a claim for damages.

### III.  Analysis

A.  Availability of Damages

In addition to the restoration of his broker's license, Mr. Lee also seeks unspecified damages from the Government.  *See* Complaint ¶ 63; Plaintiff's Motion on the Agency Record to Set Aside the Secretary of the Treasury's Revocation of His Customs Broker's License at 1; Plaintiff's Brief in Support of His Motion on the Agency Record to Set Aside the Secretary of the Treasury's Revocation of His Customs Broker's License ("Plaintiff's Brief") at 1, 11.  However, the claim for damages is beyond the jurisdiction of the Court.

It is axiomatic that " '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and [that] the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Mitchell, 445 U.S. 535, 538 (1980) (*quoting* United States v. Sherwood, 312 U.S. 584, 586 (1941) ).  *Accord* United States v. Boe, 543 F.2d 151, 154-55 (C.C.P.A. 1976).  *See also* Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("[s]overeign immunity is jurisdictional in nature").  Moreover, a waiver of sovereign immunity " 'cannot be implied but must be unequivocally expressed.' " Mitchell, 445 U.S. at 538 (*quoting* United States v. King, 395 U.S. 1, 4 (1969) ); *see also* Lane v. Pena, 518 U.S. 187, 192 (1996) (waiver of sovereign immunity "must be unequivocally expressed in statutory text" and will be "strictly construed, in terms of its scope, in favor of the sovereign") (citations omitted).

The Court's jurisdiction in this case rests on 28 U.S.C. § 1581(g) and 19 U.S.C. § 1641(e), which extend only to the review of the Secretary of the Treasury's decision revoking Mr. Lee's license.  And Mr. Lee has identified no other statute where the United States has waived its

immunity from liability for damages in circumstances such as these.[8]  Accordingly, Mr. Lee's claim for damages must be dismissed for want of jurisdiction.

## B.  Statute of Limitations

As a threshold matter, Mr. Lee contends that the revocation of his license is invalid because the revocation proceeding was initiated more than five years after the asserted violations.  Plaintiff's Brief at 4-6.  He argues that the proceeding was therefore barred by the statute of limitations.  *Id*.

The applicable statute of limitations requires that a revocation proceeding such as the one at issue here be "instituted by the appropriate service of written notice *within 5 years from the date the alleged violation was committed*."  19 U.S.C. § 1641(d)(4) (emphasis added).

## 1. Specification I

Mr. Lee posits that the statute of limitations for Specification I was triggered either on December 22, 1989 (the date of the violation that gave rise to the $1,000 penalty, which was later mitigated to $250), or on August 16, 1990 (the date of Customs' $1,000 Pre-Penalty Notice).  Plaintiff's Brief at 5.  Under Mr. Lee's reasoning, then, the statute of limitations would have expired five years later, either on December 22, 1994 or on August 16, 1995.  *Id*.  However, his position is at odds with both the facts and the law.

---

[8]Indeed, since Mr. Lee elected not to file a reply brief, he made no response whatsoever to the Government's jurisdictional argument.  *See* Memorandum in Support of Defendant's Response in Opposition to Plaintiff's Motion on the Agency Record to Set Aside the Secretary of the Treasury's Revocation of His Customs Broker's License ("Defendant's Brief") at 11-12 (setting forth Government's jurisdictional argument).

The violations at issue in the revocation proceeding were Mr. Lee's failures to timely pay assessed penalties – *not* the underlying violations which resulted in those penalties (such as the December 22, 1989 violation). Moreover, the 60-day clock for timely payment did not begin to run until Customs issued its "final determination."[9] 19 C.F.R. § 111.94. Thus, the violation detailed in Specification I in the revocation proceeding did not occur until December 9, 1991 – when Mr. Lee failed to pay the mitigated penalty within 60 days after Customs' October 10, 1991 issuance of its Final Determination I. Customs therefore had until December 8, 1996 to institute a revocation proceeding. *See generally* Defendant's Brief at 13-14. The Proposed Notice to Show Cause, dated December 27, 1995, issued almost a full year before the statute of limitations expired. *Id.*; *see also* Defendant's Supplemental Submission at 5-6.

## 2. Specification II

Although he offers no argument on the point, Mr. Lee also makes the conclusory assertion that "[t]he statute of limitations has expired regarding Specification II." Plaintiff's Brief at 8. That position too finds no support in the record.

When Mr. Lee failed to respond to Customs' $30,000 Penalty Notice (dated January 12, 1993), that notice became Customs' final determination. ALJ Decision ¶¶ 11, 23. Thus, the

---

[9]Mr. Lee mistakenly claims that the Government contends that "the statute of limitations did not begin to run until January 13, 1993 when Lee paid the penalty [initially $1,000, mitigated to $250] as part of an offer in compromise." Plaintiff's Brief at 6. The Government does not assert that the statute of limitations was triggered when Mr. Lee finally (belatedly) *paid* the penalty. Rather, as discussed above, the Government's point is that the statute began to run when the violation at issue in the revocation proceeding occurred – that is, *when the payment became overdue*, when the penalty was not paid within 60 days of its assessment. Defendant's Brief at 13-14.

violation detailed in Specification II in the revocation proceeding occurred on March 15, 1993 –

when Mr. Lee failed to pay the $30,000 penalty within 60 days after January 12, 1993. Customs then

had five years from March 15, 1993 – until March 14, 1998 – to institute a revocation proceeding.

*See generally* Defendant's Brief at 14-15. The Proposed Notice to Show Cause preceded that date

by more than two years. *Id*.; *see also* Defendant's Supplemental Submission at 5-6.

In short, Mr. Lee has no statute of limitations defense.

### C.  Right to Judicial Review of the Legality of A Penalty

Mr. Lee also contends that Customs' action in seeking revocation of his license for his failure

to timely pay assessed penalties effectively deprived him of his right to seek judicial review of those

penalties. Plaintiff's Brief at 6-7. Mr. Lee asserts that "[t]he only course of action [open to him] .

. . to prove he did not owe the penalty was to be sued by United States in a collection action." *Id*.

at 7. But, he claims, the Government's position means that "if a customs broker . . . fails to pay a

penalty timely by choosing to be sued for the penalty, such broker is automatically subjecting himself

to revocation of his license." *Id*.[10]

---

[10]Asserting that "Mr. Lee . . . never raised this issue in the administrative proceedings held below," the Government argues that "this newly introduced argument is not properly considered" by the Court. According to the Government, "Customs, [the ALJ], and the Secretary of Treasury were deprived of the opportunity to consider such argument which in turn prevents this Court from considering Mr. Lee's position." *See* Defendant's Brief at 20, *citing* United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952).

Contrary to the Government's assertions, Mr. Lee's counsel in fact did allude to this argument in the course of the administrative hearing. For example, in his opening argument, counsel for Mr. Lee asserted that "[t]he forum that [Mr. Lee] chose to defend himself was in court, not during the administrative proceeding." A.R. 14, Administrative Hearing Transcript ("Tr.") at 10. *See also* Tr. at 37 (Mr. Lee's counsel queried, "Why would that be absurd if somebody wants to choose a

Mr. Lee asserts, in essence, that he was confronted by a Hobson's choice: He could either (1) timely tender payment of a penalty he considered unjust and forever waive his right to challenge the legality of the penalty; or (2) put his license on the line by failing to pay within 60 days, in order to preserve his ability to challenge the legality of the penalty when a collection action was brought. But in fact Mr. Lee's options were not nearly so bleak.

The gravamen of Mr. Lee's argument is that a customs broker must be able to obtain judicial review of the legality of a penalty without jeopardizing his license. A broker's right to judicial review of a penalty assessed against him is settled law. *See* United States v. Ricci, 21 CIT 1145,

---

judicial forum rather than an administrative forum to contest penalty issues?"). Similarly, Mr. Lee's post-hearing submission argued that he "chose to challenge the Customs penalty decisions by not paying the penalties." A.R. 4. However, Mr. Lee's counsel did not develop the argument in the course of the hearing, the Government did not respond to it, and Mr. Lee gave no testimony to support it.

Indeed, Mr. Lee testified that his failure to pay was for other reasons. For example, when questioned why he did not pay the $1,000 penalty, Mr. Lee replied that he didn't think he owed $1,000. Tr. at 210. When asked why he paid the mitigated penalty of $250, Mr. Lee responded that he "didn't want to go through all the hassles . . . That's the reason why I paid. It's not because I felt I had to pay." *Id.* at 211. When asked why he did not pay the $30,000 penalty, Mr. Lee answered, "First of all, I don't think I owe $30,000. And secondly, I have no [financial] capabilities." *Id.* at 220. In short, nothing in Mr. Lee's testimony suggested that he intentionally failed to pay the penalties to preserve his right to judicial review.

Nor did Mr. Lee make such an argument to Customs at any time prior to the administrative hearing. However, there is no indication in the record of the hearing that the Government objected to the argument on that basis. And Defendant's Brief here does not specifically address whether Mr. Lee was free to raise the argument for the first time at the hearing, and – if not – what the consequences are, particularly where the Government did not object at the time.

In any event, it is not necessary to definitively resolve whether or not Mr. Lee's argument is properly before the Court, because – for all the reasons discussed herein – that argument has no merit.

1148, 985 F. Supp. 125, 128 (1997) (while agency decision concerning mitigation of penalty is beyond judicial review, "[t]his does not prevent a broker from challenging the legality of the underlying penalty" in court). However, Mr. Lee has cited no authority to suggest that a broker is entitled to sit on his rights, as Mr. Lee did here.

Indeed, as the Government observes, Mr. Lee's actions at the time belie his present claim "that he intentionally refrained from paying the penalt[ies] in order to obtain judicial review." *See* Defendant's Brief at 22. Certainly nothing in Mr. Lee's correspondence with Customs concerning the $1,000 penalty (eventually mitigated to $250) hinted at such an intent. But most telling was his response when Customs referred the matter to the Justice Department for collection. Rather than seeking to seize on the threatened collection action as an opportunity to argue his case in a judicial forum (his purported objective), Mr. Lee instead chose to pay the penalty to avoid litigation. On those facts, Mr. Lee simply cannot now claim that he was deprived of his rights.

Similarly, Mr. Lee gave Customs no indication that he was intentionally refraining from paying the $30,000 penalty in order to obtain judicial review. As discussed in section I.B above, Mr. Lee "stonewalled" Customs – ignoring the agency for the 60-day period and beyond, even after he was expressly warned that a failure to respond might lead to license revocation proceedings. *See also* A.R. 17 at 60. This case is thus readily distinguished from Pentax, on which Mr. Lee relies.[11]

---

[11]The Pentax cases concerned an importer's liability for duties and penalties for the importation of photographic and optical merchandise which was produced in China but marked "Hong Kong," in violation of the "country of origin marking" requirements of U.S. customs law. *See generally* 19 U.S.C. § 1304(a) (1988). To minimize its liability for penalties, Pentax made a "prior disclosure" to Customs, reporting its misstatements concerning the merchandise's country of origin. To secure "prior disclosure" treatment, an importer must: (1) voluntarily disclose its violation "before, or without knowledge of, the commencement of a formal investigation of such

*See* Plaintiff's Brief at 3, 7.   While Mr. Lee here sat mute, the importer in <u>Pentax</u> affirmatively

"informed Customs that they would 'not make any written or oral presentation in response to the .

---

violation," and (2) pay Customs the "actual loss of duties" suffered as a result of the violation.  *See* 19 U.S.C. § 1592(c)(4); 19 C.F.R. §§ 162.74(a)(1), 162.74(h).  The phrase "actual loss of duties" is defined as "the duties of which the government has been deprived by reason of the violation."  19 C.F.R. § 162.71(a)(1).

Pentax interpreted "actual loss of duties" under these circumstances as meaning the difference between (1) the true duty liability based upon the true country of origin and (2) the duty liability based upon the state country of origin.  Since the duty liability for the merchandise at issue was precisely the same whether it was imported from China or Hong Kong, Pentax contended that it was not obligated to advance any additional funds to secure prior disclosure treatment.  Customs maintained that "actual loss of duties" included "marking duties," which are imposed for failure to properly mark merchandise with its country of origin.  *See* 19 U.S.C. § 1304(f); 19 C.F.R.  § 134.2.  But Pentax reasoned that unpaid marking duties did not constitute an "actual loss of duties," because a marking duty is a special *ad valorem* duty that is not "lost," but rather arises *as a result of* a country of origin mis-marking.

Pentax sought pre-enforcement review of Customs' position in federal district court.  *See* <u>Pentax Corp. v. Myhra</u>, 844 F. Supp. 611 (D. Mont. 1994), *aff'd*, 72 F.3d 708 (9th Cir. 1995).  The district court dismissed the case, finding that Congress intended to preclude interlocutory judicial review of such an interim agency decision.  However, the district court granted Pentax's motion for a preliminary injunction pending review on appeal, on the condition that Pentax deposit funds in the court's registry sufficient to cover the marking duties until the "actual loss of duties" issue was resolved.  Pentax deposited the funds, and filed an appeal in the Ninth Circuit Court of Appeals.  *Id*. The Ninth Circuit affirmed the district court's dismissal of the suit, holding that the district court lacked subject matter jurisdiction and that "if judicial review is available at all, [it] is available only in the Court of International Trade."  <u>Pentax</u>, 72 F.3d 710-11.

Pentax's case was then transferred to the Court of International Trade, along with the funds Pentax had deposited in the registry of the district court.  Following Customs' issuance of pre-penalty and penalty notices (which Pentax declined to answer), the Government initiated an enforcement action in the Court of International Trade, seeking to recover duties and penalties. After consolidating that action with Pentax's suit, the Court of International Trade upheld Customs' determination that the "actual loss of duties" included marking duties.  <u>Pentax v. Robison</u>, 20 CIT 486, 924 F. Supp. 193 (1996), *rev'd*, 125 F.3d 1457 (Fed. Cir. 1997).  The Court of Appeals for the Federal Circuit reversed, holding that the act of mismarking the goods had not deprived the government of marking duties.  Thus, payment of mismarking duties was not required for prior disclosure treatment.  <u>Pentax</u>,125 F.3d at 1462-63.

. . prepenalty notices.' " <u>Pentax Corp. v. Robison</u>, 20 CIT 486, 489, 924 F. Supp. 193, 196 (1996), *rev'd*, 125 F.3d 1457 (Fed. Cir. 1997).

In short, the facts of this case do not support Mr. Lee's depiction of himself as a man on the horns of a dilemma. Nor is the asserted dilemma as Mr. Lee suggests.

Implicit in Mr. Lee's argument is the assumption that a broker cannot timely pay a penalty and nevertheless challenge its legality in an action to recover the monies paid. However, by analogy to <u>Trayco, Inc. v. United States</u>, 994 F.2d 832 (Fed. Cir. 1993), a broker conceivably could tender timely payment under protest, specifically reserving his right to challenge the legality of the penalty, and then bring an action for a refund, either in federal district court or in the Court of Federal Claims.[12] *See* <u>Trayco</u>, 994 F.2d at 835 (noting that importer's cover letter indicated payment was being made "under protest reserving all rights to judicial review following the exhaustion of the administrative remedies").[13] *See also* 28 U.S.C. § 1346(a)(2) (concurrent jurisdiction of district courts and U.S. Court of Federal Claims under "Little Tucker Act"); 28 U.S.C. § 1491(a)(1) (jurisdiction of U.S. Court of Federal Claims under "Tucker Act").

---

[12]Citing <u>Jose G. Flores, Inc. v. United States</u>, 11 CIT 948, 676 F. Supp. 1232 (1987), Mr. Lee argues that, had he paid the assessed penalties and then filed for a refund, "this court [the Court of International Trade] would lack jurisdiction to make such a refund." Plaintiff's Brief at 7. However, even assuming that this Court would lack jurisdiction over a broker-initiated suit to recover a penalty imposed on that broker, nothing in <u>Flores</u> speaks to the jurisdiction of other federal courts such as the district courts and the Court of Federal Claims.

[13]*See* Defendant's Brief at 21 n.9 (discussing potential availability of <u>Trayco</u>-type proceeding, to secure judicial review of penalty imposed on broker). In <u>Trayco</u>, an importer filed suit in district court seeking a refund of a mitigated penalty paid under protest to Customs. The Court of Appeals for the Federal Circuit affirmed the district court's decision, which rejected the government's argument that the Court of International Trade had exclusive jurisdiction over such matters, and found that there was no legal basis for the penalty. <u>Trayco</u>, 994 F.2d 832 (Fed. Cir. 1993).

The other "horn" of the asserted dilemma assumes that any failure to tender timely payment necessarily imperils a broker's license – even if payment is withheld for the purpose of preserving the broker's right to judicial review of the legality of the penalty. However, by analogy to Pentax (discussed above), a broker conceivably could withhold payment of a penalty (possibly depositing the funds in escrow), timely notify Customs that he is doing so to ensure that his right to judicial review is preserved, and then challenge the legality of the penalty when a collection action is brought. *See* Pentax, 20 CIT at 489, 924 F. Supp. at 196, *rev'd*, 125 F.3d 1457.

Neither of these paths has yet been definitively established as a proper means of vindicating the settled right of a broker to obtain judicial review of the legality of a penalty. But a Customs Directive has made it clear that a broker's failure to timely pay a penalty will not result in license revocation proceedings where the broker is contesting the penalty in good faith and in a timely fashion.[14] *See* A.R. 29, Customs Directive No. 099 3530-007 (Aug. 11, 1992).

Specifically, that Customs Directive notes that, "[b]ecause of the brokers' integral role in the conduct of Customs business, a high standard of broker performance is critical to the efficiency of the Customs Service and the accomplishment of the customs mission." *Id*. at 1. The Directive continues:

---

[14]United States v. Ricci, 21 CIT 1145, 985 F. Supp. 125 (1997) – on which Mr. Lee so heavily relies (*see* Plaintiff's Brief at 1-6, 9, 11) – is illustrative. In Ricci, a broker failed to pay a $30,000 penalty, which Customs sought to recover in a collection action in the Court of International Trade. As Mr. Lee emphasizes (*see* Plaintiff's Brief at 1-4), Customs did not there seek to revoke the broker's license. But, in that case, the broker had responded to Customs' notices. *See* Ricci, 21 CIT at 1145, 985 F. Supp. at 126 (noting that broker had responded to Customs' prepenalty notice and had continued communication with agency). The action of the broker in Ricci thus stands in stark contrast to Mr. Lee's inaction here, and rendered that broker eligible for more favorable treatment under the Customs Directive.

8. SUSPENSION/REVOCATION POLICY

Penalties issued to brokers under 19 U.S.C. § 1641 that remain unpaid can be considered the basis of suspension or revocation proceedings against the broker's license. *As a matter of policy, Customs will not institute such proceedings against a broker who actively contests a monetary penalty* by raising legal or factual issues on a timely basis and in the appropriate forum. *However, the license of a broker who simply refuses to pay without raising a substantive legal or factual issue in a supplemental petition concerning the penalty is subject to revocation or suspension.*

*Id*. at 5-6 (emphasis added).

In sum, there is no truth to Mr. Lee's claim that "if a customs broker . . . fails to pay a penalty timely by choosing to be sued for the penalty, such broker is automatically subjecting himself to revocation of his license." Plaintiff's Brief at 7. The dilemma that he posits does not exist. Ultimately, Mr. Lee's undoing was not his failure to pay, but his silence. Neither the law nor the facts of this case suggests that he was deprived of any of his rights.

### D. "Election of Remedies"

Characterizing the Secretary's decision as an attempt to "bootstrap" a penalty into grounds for revoking his license, Mr. Lee contends that – with respect to Specification II – the Government "had a choice between assessing a penalty or to institute a license revocation proceeding." Plaintiff's Brief at 3, 7-8. In essence, he argues that the Government cannot both assess a penalty *and* revoke his license. In support of this variation on an "election of remedies" defense, Mr. Lee cites Appendix C to 19 C.F.R. Part 171. Appendix C provides (in pertinent part): "Assessment of a monetary penalty is an *alternative sanction* to revocation or suspension of the broker's license or permit." *See* Plaintiff's Brief at 8, *quoting* 19 C.F.R. Part 171, App. C (1995) (emphasis added).

Mr. Lee's charges of "bootstrapping" are unfounded. Again, as elsewhere,[15] he fails to recognize "that the reasons for the penalties and the reasons for the revocation of license are different and separable." Defendant's Brief at 16. The $30,000 penalty was imposed for the numerous violations identified in Customs' March 1992 audit. The license revocation proceeding was based on Mr. Lee's failure to timely pay that penalty (and an earlier one).

Mr. Lee's reliance on Appendix C to 19 C.F.R. Part 171 is similarly unavailing. Appendix C's reference to an "alternative sanction" concerns Customs' choice of remedy for a *single* violation. Because Customs in this case sought *different* remedies for *different* violations, Appendix C is simply inapposite. Accordingly, Mr. Lee's "election of remedies" argument must be rejected.

E.  Penalty as "Debt" or "Obligation" Owed to Government

In yet another attempt to undermine the license revocation determination, Mr. Lee challenges the ALJ's determination that his failure to timely pay penalties constitutes a breach of 19 C.F.R. § 111.29. *See* Plaintiff's Brief at 9-10 (discussing ALJ Decision ¶ 21). As discussed above (*see* n. 1), § 111.29 requires that any "*debt or obligation* owing to the Government for which the broker is responsible" be paid "on or before the date that payment is due." 19 C.F.R. § 111.29 (emphasis added). Specifically, Mr. Lee contends that the penalties assessed against him were not "debt[s] or obligation[s]" within the meaning of § 111.29. Plaintiff's Brief at 9-10.

---

[15]*See*, *e.g.*, section III.B, *supra* (addressing defects in Mr. Lee's statute of limitations argument, which similarly fails to differentiate between grounds for imposition of underlying penalties and distinct (albeit related) grounds for revocation of license).

Neither "debt" nor "obligation" is defined in Customs regulations.  Mr. Lee therefore looks

to *Black's Law Dictionary* to define the terms, and selects as the "most appropriate" definition:

> An obligation or debt may exist by reason of a judgment as well as an express
> contract, in either case, there being a legal duty on the part of the one bound to
> comply with the promise . . . Liabilities created by contract or law (i.e. judgments).

Plaintiff's Brief at 9 (*quoting Black's Law Dictionary* (6th ed. 1990) at 1074).  Based on that

definition, Mr. Lee reasons that, since he never contracted with Customs to pay either penalty, the

penalties can constitute "debt[s] or obligation[s]" only if they constitute judgments – which they do

not.  Plaintiff's Brief at 9-10.[16]

As the ALJ correctly observed, this argument is simply "specious."  *See* ALJ Decision ¶ 21.

A penalty assessed against a broker is so plainly a "debt or obligation owing to the Government for

which the broker is responsible" that recourse to a dictionary is unnecessary.  Indeed, Mr. Lee's

selective citation of definitions is affirmatively misleading – and one need look no further than the

very authority on which he relies.  The sixth edition of *Black's Law Dictionary* begins its definition

of "obligation" by noting that the term is "[a] generic word, . . . having many wide, and varied

meanings, according to the context in which it is used."  One example of such a meaning is "[t]hat

which a person is bound to do or to forbear; any duty imposed by law, promise, contract relations

---

[16]Mr. Lee cites two cases in support of his claim that "a civil penalty does not become final, due and owing until such time 'that all available defenses may be presented to a competent tribunal.'"  Plaintiff's Brief at 9 (*citing* Nickey v. Mississippi, 292 U.S. 393, 395 (1934) *and* United States v. KAB Trade Co., 21 CIT 297 (1997) ).  However, he fails to discuss either case, and both appear to be completely inapposite.  *See generally* Defendant's Brief at 18-20.  Mr. Lee's continued reliance on Ricci is equally unavailing.  *See* Plaintiff's Memo at 9 (*citing* United States v. Ricci, 21 CIT 1145, 985 F. Supp. 125 (1997) ).  Nothing in Ricci addressed the definition of "debt" or "obligation," and the case has no relevance here.  *See* Defendant's Memo at 18 n.6.

of society, courtesy, kindness, etc." *See Black's Law Dictionary* (6th ed. 1990) at 1074.

In short, even if it were necessary to consult a dictionary to determine whether a penalty constitutes a "debt or obligation" (which it is not), the same dictionary that Mr. Lee cites actually supports the Government's position. A penalty assessed against a broker qualifies easily as a "duty imposed by law," and thus is a "debt or obligation" for purposes of 19 C.F.R. § 111.29.

### F. Failure to Timely Pay Penalty as Basis for License Revocation

Although the argument is not articulated with precision, Mr. Lee also appears to contend that, since 19 C.F.R. § 111.94 authorizes the institution of a collection action for failure to timely pay a penalty, revoking his license for such a failure constitutes an abuse of discretion and is not in accordance with law. Plaintiff's Brief at 10.

In pertinent part, § 111.94 provides:

> If the final determination is that the person is liable for a monetary penalty, the person shall pay, or make arrangements for payment, within 60 days of the date of the final determination. If the monetary penalty is not paid or arrangements made for payment within the time limitations, the Customs Service shall refer the matter to the Department of Justice for institution of appropriate judicial proceedings.

19 C.F.R. § 111.94. As Mr. Lee correctly notes, "[t]here is absolutely no language in this section [to indicate] that if a person does not pay a penalty within 60 days after a final determination that such nonpayment constitutes grounds for revocation." Plaintiff's Brief at 10. However, his observation misses the mark.

The ALJ relied upon § 111.94 only as the basis for his determination that a penalty must be paid within 60 days of its assessment. *See* ALJ Decision ¶ 21. The remedy of license revocation is authorized by a different provision of the regulations – 19 C.F.R. § 111.53(c). Indeed, Mr. Lee

concedes as much. *See* Plaintiff's Brief at 10 (acknowledging that revocation was "pursuant to 19 C.F.R. § 111.53(c)"). It is thus of no moment that § 111.94 does not mention license revocation. What matters is that revocation is authorized under § 111.53(c) where, as here, a broker "has violated any provision of any law enforced by Customs or the rules or regulations" issued thereunder.[17]

Apparently arguing in the alternative, Mr. Lee further contends that "since [he] did not violate sections 111.29 [requiring payment of debts or obligations to the Government "on or before the date that payment is due"] or 111.94 [requiring payment of penalties within 60 days]," it was "an abuse of discretion and not in accordance with the law for the Secretary to rely on section 111.53(c) to revoke [his] license." Plaintiff's Brief at 10.

But the premise of that argument is faulty. Contrary to Mr. Lee's assertion, as discussed above, the ALJ properly concluded that Mr. Lee violated §§ 111.29 and 111.94 by failing to timely pay assessed penalties, and the Secretary properly relied upon the ALJ's conclusion. Accordingly, under § 111.53(c), the Secretary was entitled to revoke Mr. Lee's license.

---

[17]As noted in section II above, "[w]hen the penalty chosen by an agency is within the range of sanctions provided by applicable disciplinary regulations, the severity of the sanction imposed is within the discretion of the agency." Barnhart v. U.S. Treasury Dep't, 9 CIT at 287, 291, 613 F. Supp. 370, 374 (1985) (*quoting* Tempo Trucking and Transfer Corp. v. Dickson, 405 F. Supp. 506, 514 (E.D.N.Y. 1975) ) (citation omitted). Thus, the Court is not free to second-guess the agency's choice of sanctions.

## IV. <u>Conclusion</u>

For the foregoing reasons, the decision of the Secretary to revoke Mr. Lee's broker's license is supported by substantial evidence and is otherwise in accordance with law. Accordingly, Mr. Lee's motion is denied, and the Secretary's decision is affirmed.

Judgment will be entered accordingly.

_____
Delissa A. Ridgway
Judge

Decided: March 29, 2002
New York, New York